## GALVESTON & W. RY. CO. v. CITY OF GALVESTON.

(Court of Civil Appeals of Texas. Galveston. Jan. 16, 1913. Rehearing Denied March 20, 1913.)

1. RAILROADS (§ 76*)—USE OF STREETS—MUNICIPAL ORDINANCE—CONSTRUCTION—RELOCATION OF RAILROAD.

Under a city ordinance granting a railroad company a right to relocate its track between two points upon any degree of curvature, not less than 3 degrees, which it might determine upon, it was authorized to relocate its track upon a line which made a short curve of 13 degrees at one end and another short curve of 10 degrees at the other end, united by a straight line; the relocation line being in substantial conformity with the limitations of the ordinance, though not entirely forming a curve.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 195, 196, 199–201; Dec. Dig. § 76.*]

2. RAILROADS (§ 76*) — MUNICIPAL ORDINANCE — CONSTRUCTION — RELOCATION OF RAILROAD.

A city ordinance, authorizing the relocation of a railroad between two points, carried with it the right to cross such streets and alleys, not crossed by the old line, as were necessary to such relocation.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 195, 196, 199–201; Dec. Dig. § 76.*]

3. RAILROADS (§ 78*) — MUNICIPAL ORDINANCE — CONSTRUCTION — RELOCATION OF RAILROAD.

An ordinance of the city of Galveston, authorizing the relocation of a railroad "at any time thereafter" between two points, from which the track curved to the water's edge, which it might determine upon, did not postpone the right to relocate the track until such time as the encroachment of the gulf water should render maintenance in the old location impracticable, or until a sea wall should be constructed and intersect the same, but gave a present right to relocate the track.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 194; Dec. Dig. § 78.*]

4. RAILROADS (§ 75*)—RIGHT OF WAY—MUNICIPAL ORDINANCE—CONSTRUCTION.

Where the first section of a city ordinance confirmed a prior grant of a railroad right of way, and concluded with a proviso that the rights granted should be forfeited unless used within one year, such proviso applied only to the first section, where it appeared from the context of the entire ordinance that such was the intention.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 183–191; Dec. Dig. § 75.*]

5. STATUTES (§ 228*)—CONSTRUCTION—PROVISO.

While a proviso usually qualifies the language preceding it, it may apply to provisions of succeeding sections of the same statute, if from the context of the statute such clearly appears to have been the intention.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 310; Dec. Dig. § 228.*]

6. RAILROADS (§ 75*)—RIGHT OF WAY—GRANT BY CITY—VALIDITY OF CONDITION.

Where the Legislature grants railroad companies the right to occupy city streets upon condition that the consent of the city be first obtained, and a city grants a right, and attaches to it a condition subsequent, not authorized by the statute, to the effect that the grant will be forfeited unless exercised within one year, such condition is void.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 183–191; Dec. Dig. § 75.*]

7. RAILROADS (§ 75*)—RIGHT OF WAY—ACCEPTANCE OF GRANT.

That a railroad company, after being given a right by ordinance of the city of Galveston to relocate its track between two points, from which it curved to the water's edge, constructed its line over certain streets, the right to which it had been granted by the same ordinance, rehabilitated its track, and generally put itself in shape to carry out the purpose for which the relocation of the track was desired, constituted an acceptance of the grant, though it did not attempt to make the relocation for several years, and until the gulf waters and the building of the sea wall deprived it of the old location.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 183–191; Dec. Dig. § 75.*]

8. RAILROADS (§ 82*)—RIGHT OF WAY—FORFEITURE OF GRANT—"REASONABLE TIME."

Where, by valid ordinance of the city of Galveston, a railroad company was granted a right to relocate its track between two points where it curved to the water's edge, and where it accepted such grant, it did not forfeit its right thereto for failure to exercise it within a reasonable time, though it delayed for 21 years before attempting to relocate its track, where there appeared to have been ample excuse for such delay; "reasonable time" being a relative term, depending upon the attending circumstances affecting the doing of the work.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 213–219; Dec. Dig. § 82.*

For other definitions, see Words and Phrases, vol. 7, pp. 5977–5983; vol. 8, p. 7780.]

9. RAILROADS (§ 82*) — ORDINANCE — CONSTRUCTION—GRANT OF RAILROAD RIGHT OF WAY.

Where a city had no right to attach, as a condition subsequent to a grant by ordinance of a railroad right of way, a provision that the grant should be forfeited unless exercised within a reasonable time, such a condition could not be implied.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 213–219; Dec. Dig. § 82.*]

10. RAILROADS (§ 82*) — RIGHT OF WAY — FORFEITURE OF GRANT.

That a railroad company continued to use its old location for about 21 years after being granted a right by ordinance of the city of Galveston to relocate its track between two points, where it curved to the water's edge, did not work a forfeiture of its rights under the grant.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 213–219; Dec. Dig. § 82.*]

11. RAILROADS (§ 75*) — RIGHT OF WAY — GRANT—RAILROAD COMMISSION.

An order of the State Railroad Commission, giving a railroad company a right to relocate its track upon any line "upon which it may legally acquire the right of way," did not give it a right to relocate its track without the assent of the city, since not only was the order not open to such construction, but under Rev. St. 1895, art. 4445, as amended by Acts 27th Leg. c. 36, defining its powers in such respect, the Commission had no authority to grant such a right.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 183–191; Dec. Dig. § 75.*]

12. RAILROADS (§ 75*) — RIGHT OF WAY — WAY OF NECESSITY.

That by the erection of the sea wall in the city of Galveston, by the county of Galves-

ton, a railroad company's track was cut in two, did not entitle the company to a new location across streets and alleys as a way of necessity, without the assent of the city, though the rule would be otherwise, had the wall been erected by the city; no such right being given by Rev. St. 1895, art. 4438, which provides for the acquisition of railroad rights of way in cities.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 183–191; Dec. Dig. § 75.*]

13. CONSTITUTIONAL LAW (§§ 134, 277*)—IMPAIRMENT OF CONTRACTS—RAILROAD RIGHT OF WAY.

Where the connection between two points of a railroad in the city of Galveston was destroyed by the gulf waters and the building of the sea wall by the county of Galveston, the railroad company had no right, under Const. U. S. Amend. 14, Bill of Rights, art. 1, § 19, or Const. U. S. art. 1, § 10, with regard to the impairment of the obligation of contracts, to build its track across streets and alleys on a new location, but must seek such right solely under an ordinance of the city of Galveston.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 344, 762, 766, 949; Dec. Dig. § 134, 277.*]

14. MUNICIPAL CORPORATIONS (§§ 680, 681*)—POWERS—GRANT OF RAILROAD RIGHT OF WAY.

Under its amended charter of 1889, giving plaintiff railroad company the right "to curve into and from any and all of the streets and avenues at any point or points it may select," the city was authorized to grant to the railroad company the right to relocate its track.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1459–1466; Dec. Dig. §§ 680, 681.*]

15. RAILROADS (§ 75*)—RIGHT OF WAY—VALIDITY OF GRANT.

Where a railroad right of way in a city was acquired by one company by purchase from another, and the city by a subsequent ordinance confirmed and granted this right to the purchaser, the fact that the purchase was illegal could not invalidate the grant.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 183–191; Dec. Dig. § 75.*]

Appeal from District Court, Galveston County; Clay S. Briggs, Judge.

Action by the Galveston & Western Railway Company against the City of Galveston. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

See, also, 137 S. W. 724.

Walter Gresham, of Galveston, and T. D. Gresham, of Dallas, for appellant. Mart H. Royston and I. Lovenberg, Jr., both of Galveston, for appellee.

REESE, J. In this suit the Galveston & Western Railway Company seeks by injunction to restrain the city of Galveston and its governing body from interfering with the laying of track to form a connection between its track on Ninth street and its track on Avenue N north of the sea wall and its right of way in the city of Galveston. The trial court sustained a general demurrer and certain special exceptions to plaintiff's petition. Plaintiff declined to amend, whereupon judgment was rendered dismissing the cause, from which judgment this appeal is prosecuted. The case was before this court upon a former appeal from an order of the district judge refusing a temporary injunction, which order was affirmed on grounds which did not dispose of the merits of the case.

As preliminary to the decision upon the questions of law presented by this appeal, the following material allegations of the petition are set out, to be followed by such further reference to the particular allegations involved in the several assignments of error as may be necessary. As the court sustained a general demurrer to the petition, appellant is compelled to endeavor to support, in its assignments of error and brief, every ground urged for the right contended for, and to combat every objection urged by appellee. The special exceptions urged by appellee, all of which appear to have been sustained by the trial court, are in legal effect general demurrers based upon particular allegations of the petition; that is, the petition bases the right claimed upon several distinct grounds, and the special demurrers except to the sufficiency of each of the several grounds to support the claim set up.

The Galveston, Brazos & Colorado Narrow Gauge Railway Company was chartered by special act of the Legislature February 2, 1875. Sp. Laws 1875, c. 12. By the charter the company was authorized to construct and operate a continuous line of railroad, commencing at any point within the corporate limits of the city of Galveston; thence westwardly on Galveston Island on the most practicable route to cross West Bay; thence across the Brazos river, in Brazoria county; thence up Colorado valley, on either side of the Colorado river, passing through Matagorda, Wharton, Colorado, Fayette, and Bastrop counties near or to the city of Austin, said railroad to be of three feet gauge. Under this charter this company located and built in 1875 a narrow gauge railroad beginning on Avenue A near Tenth street; thence curving into Ninth street, and thence on Ninth street to a point near Avenue N; thence into and along Avenue N westwardly to a point near Thirty-Seventh street; thence into and southwardly along Thirty-Seventh street to a point near Avenue T; thence into and westwardly along Avenue T to Fifty-Seventh street; thence south and west, to and across Fifty-Seventh street, to the western limits of the city; thence southwardly and westwardly to Lafitte's Grove, on Galveston Island, about 12 miles from the city limits. This road was operated by the company until about April, 1881, about which time it was sold under deed of trust to one Henchman, by whom it was sold and conveyed, about July 1, 1881, to the Texas & Mexican Railway Company, which was chartered under the general laws of the state March 12, 1881, with power to own and op-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

erate said railroad, and by which company said road was operated until 1888.

The city of Galveston, by ordinance adopted in 1881, granted to this last company the right to occupy, among other streets mentioned in the ordinance, Ninth street and Avenue N with the railroad theretofore constructed by the Galveston, Brazos & Colorado Narrow Gauge Railway. In February, 1888, the properties, rights, and franchises of the Texas & Mexican Railway Company were acquired by sale under judgment and execution by the Galveston & Western Railway Company (the present plaintiff), which company was created under general laws on December 9, 1887, and was empowered by its charter "to build and acquire, or partly build and partly acquire, a railroad, commencing at a point on Galveston Bay in Galveston city, Galveston county, Texas; thence through the streets and public highways of said city to a point in said city of Galveston at or near Carankaway Reef westward of the city, with the right to provide for other extensions and branches, or other branches in the manner provided by law." It was alleged that under and by virtue of the aforesaid purchases and transfers plaintiff acquired and succeeded to all and singular the railroad rights, properties, and franchises belonging to its said predecessors.

In November or December, 1888, the railroad, then a narrow gauge, by transfers of plaintiff's capital stock, passed from the original corporation into the control of certain Galveston parties, when it was determined to broaden the gauge to standard and to rearrange its tracks in the city of Galveston. In order to be able to further the purpose of holding an exhibition at Centennial Park, in the western part of the city, as well as for furnishing terminal facilities for another road then contemplated, plaintiff, before March 8, 1889, broadened the gauge to standard, by adding a third rail along Ninth street, thence crossing into and extending along Avenue N to a point where it crossed into Avenue N. The connection from Ninth street into Avenue N as originally located in 1875 by the Galveston, Brazos & Colorado Narrow Gauge Railway Company was north of the sand hills and several hundred feet from the Gulf of Mexico; but, by gradual erosion, the Gulf waters encroached upon this connection, and in 1886, while the road was being operated by the Texas & Mexican Company, the same was damaged by storm, but was immediately rebuilt upon a trestle. In 1889, as the result of further erosion, the trestle was extended by plaintiff along the gulf shore near the water's edge. This trestle was again damaged in 1896, and by erosion, and as the result of the great storm of 1900, was entirely washed away, and the land upon and near which it was built became, and has been continuously since, submerged by the waters of the gulf. The gulf waters encroached upon the shore line opposite the intersection of Ninth street and Avenue N about 400 feet from 1875 to 1889. There was a further slight encroachment from 1889 to 1899, and a further encroachment of more than 175 feet from 1899 until September, 1900 (the date of the storm aforesaid).

By act of the Legislature March 30, 1887 (Sp. Laws 1887, c. 6), the charter of the city of Galveston was amended for the purpose of authorizing the construction of a sea wall or breakwater, and the issuance of bonds and levying a tax to pay for the same. This act, as shown by the emergency clause, was predicated upon the necessity of a speedy construction of such sea wall for the protection of the city.

Plaintiff was constructing and had in contemplation a three-rail combination narrow gauge and standard gauge railroad in the city of Galveston, and the curves in the original lines from Ninth street into Avenue N, from Avenue N into Thirty-Seventh street, and from Thirty-Seventh street into Avenue T, and particularly the last two, were upon sharp curvatures intended for narrow gauge equipment. With a view of acquiring the right to a continuous and unobstructed line along Ninth street, and thence into and westwardly along Avenue N, plaintiff made application to the city council for a confirmation of the rights and franchises in its streets and highways heretofore exercised by the Galveston, Brazos & Colorado Narrow Gauge Railway Company, and in addition to grant to plaintiff its assent to certain other rights, and franchises, including the right, at any time thereafter, to relocate its connection from Ninth street to Avenue N, should encroachment of the gulf render it impracticable to maintain the connection in the original location, or should the sea wall be constructed along the gulf shore and intersect the same. Thereupon the city, by its governing body, on March 8, 1889, enacted an ordinance which is fully set out in the plaintiff's petition, but only the material provisions of which are here set out, and are as follows:

"Section 1. That the rights of way heretofore granted in the city of Galveston to the Galveston, Brazos & Colorado Narrow Gauge Railway Company and to the Texas & Mexican Railway Company on Ninth street from Avenue A to Avenue N, thence along Avenue N to Thirty-Seventh street, thence along Thirty-Seventh street to Avenue T, thence westwardly along Avenue T to Fifty-Fifth street, with the right to curve south and west at any point west of Fiftieth street, be and the same are hereby confirmed. The right to construct, maintain, own and operate a railroad with either broad or narrow gauge tracks, or both, and with such side tracks, turnouts and switches as may be necessary, be and the same are hereby granted to the Galveston & Western Railway Company, as the successor of said railway companies, over and along the above-mentioned streets, and

on Avenue N, west from Thirty-Sixth street, with the right to curve northwardly from Avenue N at any point west of Fortieth street, into Forty-Third street, or at any street west of and parallel to Forty-Third street that said railway company may select and occupy; thence northwardly down the street selected, with the right to connect with tracks of the Galveston, Houston & Henderson Railway Company, and the Gulf, Colorado & Santa Fé Railway Company at any point west of Forty-Third street. That the said railway company shall construct, operate and maintain its railway on the streets over which the right of way is hereby confirmed and granted within one year from the date hereof; otherwise the rights herein granted shall be forfeited.

"Sec. 2. The right is hereby granted to said railway company to curve from Ninth street into Avenue N, from Avenue N. into Thirty-Seventh street, and from Thirty-Seventh street into Avenue T, upon any degree of curvature not less than three degrees which said railway company may determine upon, with the right to come into Avenue A and connect with any and all railroads now, or that may hereafter be constructed on that street, with the further right to curve into and construct, maintain, own and operate its railroad on Post Office street, or on Church street, from Forty-Third street westwardly to the western limits of the city. The said railway company shall construct their railway over Church or Post Office street, as in this section granted, within one year from date hereof; otherwise the right to build on said streets shall be forfeited."

"Sec. 8. That in the event said railway company shall proceed to construct, maintain and operate a railroad over the right of way herein granted, then any other railroad company desiring to participate in the ownership anl operation of same may do so by paying an equal pro rata of the costs of said railroad over said right of way, and in case said railway companies cannot agree upon the cost of said railroad or upon terms satisfactory among themselves, then the same shall be determined by a board of arbitration, consisting of one arbitrator to be appointed by the city of Galveston, and one arbitrator to be appointed by the railway company or companies owning or operating the same, and in case of disagreement of said arbitrators, they shall appoint an umpire to decide the matter; and should the said railway company or companies refuse to appoint an arbitrator when applied to, then in that case the city council shall proceed to appoint two artitrators, who shall proceed to determine the matter as hereinbefore provided. It is the object of this section to make a general railroad over the right of way herein granted, to the end that all railway companies that may now or hereafter terminate in Galveston, so desiring, may acquire equal rights

in the ownership and operation of said railroad."

Plaintiff accepted the rights and rights of way given and assented to by the ordinance, and immediately after its passage hurriedly extended its line to Centennial Park before the opening of the Exposition in June, 1889, built a combination narrow and standard gauge three-rail railroad along Avenue A westward from a point near Thirty-Seventh street to Forty-Second street, thence curving into and extending along Forty-Second street southwardly to a point near Avenue Q, and thence curving onto and extending along Avenue Q to Centennial Park. Within one year from the passage of the ordinance, plaintiff constructed, operated, and maintained all of its tracks in the city of Galveston required by the ordinance to be constructed and operated within that time, including a track curving from a point near Forty-Second street and Avenue N into and northwardly along Forty-Third street, curving into Post Office street and forming connection near Forty-Fifth street with the tracks of the Gulf, Colorado & Santa Fé Railroad, and of the Galveston, Houston & Henderson Railroad, also a track from Centennial Park westwardly along Avenue Q to Fifty-Seventh street, thence southwestwardly across the city limits to a connection with the original line to Lafitte's Grove.

Thereafter, about May, 1890, plaintiff ceased to use and took up the track of the original narrow gauge line on Thirty-Seventh street south of Avenue N, thence into and along Avenue T to Fifty-Third street, thence south and west to and across Fifty-Seventh street to the western limits of the city. Immediately after the passage of the ordinance referred to, on July 17, 1889, plaintiff amended its charter. A copy of the charter is attached to and made a part of the petition, but only the material parts of the same are here set out, as follows:

"This corporation shall be and is hereby invested with the right of locating, constructing, owning, operating and maintaining a railroad and telegraph line, commencing in the city of Galveston at a point on Avenue A; thence into and along Ninth street to Avenue N; thence along Avenue N to Forty-Third street; thence along Forty-Third street to Avenue Q; thence along Avenue Q, curving southwestwardly to the western limits of the city of Galveston, with the right to curve into and from any and all of the streets and avenues, at any point or points it may select; thence southwestwardly to a point on its line as now constructed, south of lot No. 42, in section No. 1 of Galveston Island; thence westwardly down Galveston Island to a point near Carankaway Reef, with the right to build to, and connect with any railroad running into said city," etc.

The gulf waters did not encroach upon its Ninth street and Avenue N connections, so

as to render it impracticable to maintain the same, in its former location, until after the great storm of 1900. Immediately after this storm the question of the erection of a sea wall began to be agitated. This sea wall was built in 1903. It was built by the county of Galveston, the city being financially unable to carry the burden; but its purpose and design was to protect the city of Galveston, its property and inhabitants, and the movement for its building was begun and actively instigated by the city of Galveston, the city council acting in concert with the commissioners' court representing the county. Immediately after the sea wall was constructed, plaintiff selected the route of the proposed relocation of its line connecting the line on Avenue N and Ninth street. About the same time the city began the work of raising the grade of the city, and in connection with such filling operations excavated a canal 200 feet wide and 20 feet deep inside the sea wall and along the line selected by plaintiff for such relocated line, and continuously thereafter and until September, 1910, plaintiff's railroad along Ninth street, Avenue N and Forty-Third street was affected by such grade-raising operations, and plaintiff was compelled at great expense to elevate its track upon temporary trestle work from two to seven feet to place the same above the filling. That as soon as practicable after the sections of the city through which its track lay were filled to grade plaintiff, between August and December, 1909, at an expense of more than $15,000 rehabilitated its tracks along Forty-Third street, thence eastwardly along Avenue N to the grade-raising canal, and along Ninth street southwardly to the canal, when such work of reconstruction was held in abeyance pending the refilling of the canal, which was not completed until about September, 1910, when plaintiff commenced to lay its track from Avenue N along the proposed line of connection inside and north of the sea wall, when defendant tore up the track so laid, and has since with its police force forcibly prevented the laying of this track connecting the lines of Avenue N and Ninth street.

The location of this connection is upon a curvature of more than 3 degrees, and is wholly between a 3-degree curve and the intersection of the two streets, being described as follows: Turning out from the original track on Ninth street near the south line of Avenue L, curving southwardly upon approximately a 13-degree curve, to a point near the south line of Avenue M, and about 10 feet from the sea wall right of way, extends thence westwardly parallel with the sea wall right of way to a point near the west line of Eleventh street; curves thence southwestwardly upon approximately a 10-degree curve to the original track on Avenue N near the east line of Twelfth street, a distance of about 1,200 feet. A map hereto attached shows the location of this relocation, and al-so a full 3-degree curve, which shows that the relocation is within the limitations of the ordinance, being between the full 3-degree curve and the original line at the intersection of Ninth street and Avenue N.

In 1894 the city council adopted a resolution declaring all the privileges, rights, and franchises theretofore assented to by the city to be forfeited, and under the instructions of the council a suit was brought by the city of Galveston against the plaintiff to have such forfeiture judicially declared. This suit was tried in 1896, and resulted in a judgment in favor of the city, declaring the forfeiture as prayed for; but this judgment was in 1897 reversed by the Supreme Court, and judgment rendered for plaintiff. During the pendency of said proceedings, plaintiff was unable to raise money to maintain its road in proper condition, and by a contract executed May 21, 1895, by and between plaintiff and the Galveston, La Porte & Houston Railway Company, it was agreed that the respective properties should be operated and used together, with a view to consolidation, and therein the La Porte Company agreed to maintain plaintiff's tracks, roadbed, etc., in the city of Galveston, and to operate trains over its tracks, and pursuant to said contract the La Porte Company took possession of and operated plaintiff's railroad. By an act of the Twenty-Fifth Legislature (chapter 167, Acts 1897) the La Porte road was authorized to acquire by purchase, lease, or otherwise the property and franchises of plaintiff, and plaintiff was authorized to sell the same. On January 27, 1896, by proceedings instituted in the United States Circuit Court, a receiver was appointed for the La Porte road. Thereafter during the year 1896 the trestle at Ninth street and Avenue N was damaged by the water of the gulf, and said receiver was without funds with which to repair the same, though it operated other portions of plaintiff's road. Upon the termination of the receivership proceedings in 1899 the properties of the La Porte Company, together with all its rights under said contract with plaintiff, were sold by the receiver under order of the court and acquired by the Southern Pacific Company, whereupon said last-named company took possession of plaintiff's railroad and began to repair its tracks, commencing on Avenue N near Twenty-Fifth street, and had proceeded eastwardly along Avenue N to Twenty-First street when the storm of 1900 interrupted all business in the city of Galveston and forced a cessation of improvements along plaintiff's tracks, including repairs to the trestle at Ninth street and Avenue N.

It was alleged that a connection inside of and north of the sea wall between the separated parts of its tracks is necessary to the operation of its railroad, and that after the sea wall was constructed across its line at Ninth street and Avenue N, and after plaintiff

had selected a line along which to relocate its said connection, application was made by it to the Railroad Commission of Texas for authority to change its line, and to construct a track along the proposed line of relocation. Thereupon the Railroad Commission on July 27, 1903, made the following order:

"The matter of the application of the Galveston & Western Railway Company for permission to change the location of its track in the city of Galveston, on account of the construction of the Galveston sea wall, having been heard by this Commission on July 23, 1903, and the same having been taken under advisement, it is now hereby ordered by the Railroad Commission of Texas that permission be and the same is hereby granted to said railway company to change its track and to construct its railroad from Avenue N into Ninth street, upon any line it may select, south of Avenue L and north of the concrete sea wall, and upon which it may legally acquire the right of way."

The line along which plaintiff proposes to reconstruct its track is north of the sea wall and south of Avenue L, and plaintiff has by purchase and otherwise legally acquired a right of way varying from 50 to 100 feet wide and contiguous to the north line of the sea wall right of way along and across all private property over which it proposes to extend its said connecting track.

After the sections of the city through which its tracks extended were filled and raised to grade, and when plaintiff began to rehabilitate its tracks, the city did not oppose the reconstruction of its railroad along Forty-Third street, and thence eastwardly into and along Avenue N to the grade-raising canal, or along Ninth street southwardly to the canal, but recognized its rights and rights of way in said streets. When plaintiff commenced placing its tracks in condition for operating trains along Forty-Third street, Avenue N, and Ninth street, a petition was presented to the board of commissioners of the city praying them to instruct the city attorney to institute proceedings to annul the franchises theretofore given to plaintiff by the city for nonuser. The said board, upon the opinion of its attorney, denied the petition, on the ground that it was wholly without authority to grant it. Thereafter a similar petition was presented to the said board, praying that the Attorney General be requested to institute proceedings in the name of the state, to forfeit plaintiff's charter and thereby accomplish a removal of plaintiff's tracks, which petition was on October 28, 1909, forwarded to the Attorney General. After a verified answer and brief had been filed with that officer by plaintiff, and after a personal investigation by him, he declined to institute such proceedings. Thereupon plaintiff reconstructed its tracks along Forty-Third street, thence into and along Avenue N, and southwardly along Ninth street to the grade-raising canal.

After the Railroad Commission had issued its order as aforesaid, plaintiff, on July 31, 1903, and before purchasing a right of way over private property for such relocation of its tracks, notified the board of commissioners of the city of the said order, and of its intention to relocate its said connection along the proposed line, but expressed a willingness to establish the same upon some other line, should this line not be satisfactory; but no other or different line was suggested by said board, whereupon plaintiff proceeded at an expense of more than $5,000 to acquire a right of way over all necessary private property. After the filling of the canal, plaintiff formally applied to the board of commissioners for a grant of assent to a connecting track along the proposed relocated line, and offered to them the opportunity to grant its assent in the manner prescribed by law and upon such conditions as it might legally impose; but said board, by resolution adopted September 22, 1910, denied its assent for plaintiff to lay a track across or upon any street in the city for the purpose of such connection.

It is alleged in substance that the section of the city where the relocated line is proposed is sparsely settled, where the streets are little traveled, that there are no buildings south of said line, and none on the north nearer than 200 feet, that the proposed connecting line will not extend along any street or alley of the city, that the proposed line is less than 400 feet at its farthest point from the old location, and that there are no approaches to the sea wall boulevard over the connecting line from Avenue M and M½, or intervening alleys. It is charged in substance that defendant's refusal to give its assent to the relocation of this line across the intervening streets and alleys is harsh, oppressive, and unjust, and done for the purpose of preventing the operation of its said railroad over the streets over which it has the right to operate, and a mere form and pretense under the guise of which it seeks to maintain a disconnection of plaintiff's track, and indirectly divest plaintiff of its lawful rights on Ninth street and Avenue N, and force it to abandon its railroad on said streets; that if it is not allowed to relocate such connection between Ninth street and Avenue N, the most valuable part of its railroad will be destroyed, and its creditors, who hold an aggregate secured indebtedness of more than $170,000 against plaintiff's railroad and franchise, will lose the greater part of their debt.

There were further specific allegations as to the building of the sea wall, which was alleged to have been strenuously urged by the city as a necessary means of saving and protecting the city, but which the city was

unable to undertake on account of its financial condition, but which was, upon the plea of the city, undertaken by the county, the disruption of the plaintiff's line by the building of the sea wall, and the consequent permanent disconnection of the two ends of its line, and the necessity for a relocation of such connection on the line proposed north of the sea wall to preserve the life of the enterprise. There was a prayer that plaintiff be adjudged to have the right to establish the relocation of the connection between its line on Avenue N and on Ninth street as proposed, and that defendant be enjoined from interfering with the exercise of this right.

The following map will illustrate the situation as alleged in the petition:

. 'Other maps were attached to the petition, showing the gradual erosion of the waters of the gulf at and in the neighborhood of the intersection of Avenue N and Ninth street. The questions raised by the general and special demurrers are presented by the several assignments of error.

[1] Under the first assignment appellant presents the proposition that by the ordinance of March 8, 1889, the city of Galveston granted to it the right at any time thereafter to curve its railroad from Ninth street into Avenue N upon any degree of curvature, not less than 3 degrees, which it might determine upon. That the right was given to change the old location at the intersection of Avenue N and Ninth street, we think, is so entirely clear as not to require discussion. No other construction of the ordinance is permissible. By the first section the right of way over certain streets theretofore given to the original narrow gauge railway company, and, as we understand the allegations of the petition, then occupied by its track to a large extent, if not wholly, was confirmed. This included the line on Avenue N and Ninth street, with a connection between the two across the block at the intersection of those streets, and in the immediate vicinity of their actual intersection. This part of the line was then actually occupied by appellant's track. This line was built in 1875, before the enactment of the present law, which required the assent of the city to the use of its streets by the railroad company, which is article 4438, R. S., and which was not enacted until 1876 (section 23, c. 97, Acts 1876). Proceeding, section 1 of the ordinance grants to appellant, as the successor of the Galveston, Brazos & Colorado Narrow Gauge Railway Company and the Texas & Mexican Railway Company, the right to construct and operate a line with either broad or narrow gauge track, or both, on the aforesaid streets and other streets of the city. By section 2 the right is granted "to curve from Ninth street into Avenue N * * * upon any degree of curvature not less than three degrees which it may determine." The location of the line, as then existing, was upon a curve very much sharper; that is, of many degrees greater than 3 degrees. This right the appellant already had, and, lest there should be any doubt about it, the right was confirmed by section 1 of the ordinance. So the first part of section 2 of the ordinance was entirely useless and unnecessary, unless it granted the right to change the location of the line, as it then existed at the intersection of those two streets. The only limitation placed upon this grant was in the degree of curvature within which the relocation was authorized to be made. The purpose was clearly to confine such relocated line as nearly as practicable to the location of the old line and the actual intersection of the streets. The greater the degree of curva-

ture the nearer the curve would approach to the actual intersection, and the smaller the degree of the curve the farther away from the old line the new location would extend. It necessarily follows that the larger the degree of curvature adopted in turning from the one street into the other the less use would be required of the streets and alleys required to be crossed. But the only limitation placed upon the right thus given was that the relocated line should not be farther away from the point of intersection of the streets than would be made by a curve of 3 degrees. The line actually proposed by appellant, while not entirely a curve, being in fact a short curve of 13 degrees at Ninth street and another short curve of 10 degrees at Avenue N, united by a straight line, in technical parlance a tangent, nevertheless it conforms substantially to the limitations of the ordinance. We may say, in passing, that there is only one possible line upon which a curve of 3 degrees, or any other degree of curvature, can be laid from the one street to the other. Appellant was required by the ordinance to keep within this line. We think the conclusion is inevitable that the right to relocate their line at this point, on the proposed line, was expressly given by the ordinance, under any possible construction of its terms.

[2] Nothing is said in the ordinance about crossing any other streets and alleys by such new line thus authorized. But, giving full force and effect to the principle that by grants of this character nothing passes except what is either expressly or by clear implication embraced in the terms of the grant, it must be held that the right to adopt the curve of 3 degrees from the one street to the other necessarily carried with it the right to cross such streets and alleys not crossed by the old line as were necessary, and at such places as were necessary. Without this right nothing in fact would have passed by the express terms of the grant. 28 Cyc. 884; P. S. V. R. R. Co. v. P. & R. R. R. Co., 157 Pa. 42, 27 Atl. 683. It is true, we believe, except as to one or two alleys, that the old line crossed all of the streets crossed by the new line, in a certain sense; but such crossings were in the two streets named, and therefore at a different place. The right of a city includes as much a right to say at what point its streets and alleys may be crossed by a railroad track as that they may be crossed at all. Our conclusion upon this point is therefore that, whatever the motive of the appellant in asking or the city in granting the right, by the terms of the ordinance appellant was granted the right to change the location of its old line at the intersection of Avenue N and Ninth street and to relocate this connection upon the line now proposed.

[3] The further contention is made by appellant, in the proposition stated under the

first assignment of error, that this right was to be exercised "at any time thereafter," and that the ordinance contemplated such change in the location of the curve whenever it became impracticable, by reason of encroachment of the waters of the gulf, to maintain the same in its original location, or should a sea wall be constructed along the gulf shore, and intersect this connection. It is alleged in the petition—and on this appeal we have only to deal with those allegations—that with full knowledge of the facts existing (referring to the continued erosions by the gulf waters and the contemplated erection of a sea wall) appellant applied to the city for the right "at any time thereafter to change and relocate the connection from Ninth street into Avenue N, should the encroachment of the gulf waters render it impracticable to maintain the connection in the original location, or should a sea wall be constructed along the gulf shore and intersect the same." This does not amount to an allegation that this was in contemplation by the city at the time of the passage of the ordinance, nor do the allegations that appellant applied for a grant, to be exercised whenever the necessity therefor, on account of the causes referred to, might arise in the future, serve to add anything to the plain terms of the grant. It would seem, if the allegations of the petition are true in this respect, that had the necessity for a change of this location never arisen from any of the causes referred to, it was not intended that the right should pass. This would be in direct conflict with the plain terms of the ordinance, which we interpret as giving a present right, and not to be postponed until the happening of any of the events mentioned. Should appellant have undertaken at once after the passage of the ordinance to change this location as now proposed, we do not see what possible objection could have been legally made on the part of the city, whether this right was given in order to allow appellant to change its tracks at this point, in order to meet the requirements of a standard gauge road, or to place its track at this point beyond danger from the constant encroachment of the waters of the gulf, or from interference by the construction of a sea wall along the shore, provision for which had been made by amendment of the city's charter in 1887, we cannot determine from the terms of the ordinance, nor the allegations of the petition. It seems to us that if it had been intended either to limit or condition the exercise of the power to the necessity therefor thereafter occurring, or to extend the beginning of the exercise thereof to such time in the future as necessity might require, there would have been some language used to aptly express such intention, and it would not have been left to such uncertain implication.

[4] Under the second assignment the proposition is stated that the right given by sec-

tion 2 of the ordinance to curve from Ninth street into Avenue N upon any degree of curvature appellant might determine upon, not less than 3 degrees, is not subject to the limitation that it should be exercised within one year. Section 1 of the ordinance, after confirming the right of appellant as successor to the other railroads mentioned to the use of certain streets then actually occupied further grants the right to occupy other streets to the westward, following with this provision: "The said railway company shall construct, operate and maintain its railway on the streets over which the right of way is hereby confirmed and granted within one year from the date hereof; otherwise the rights herein granted shall be forfeited." Although this language is not preceded by the word "provided," it is nevertheless, in substance a proviso, and must be so construed. Black on Interpretation of Law, p. 270; 36 Cyc. 1162.

[5] It is usually the province of a proviso to qualify the language preceding it. This is not a hard and fast rule. The proviso may apply to those provisions contained in the same or succeeding sections of the enactment in which it is found, if such appears from the context to be the intention; but usually it is to be limited to the preceding provisions, and generally to those immediately preceding, unless it clearly appears that it was intended to have a wider scope. Black, Interpretation of Statutes, p. 273; 36 Cyc. 1163.

Applying these rules to the provision in question, for several reasons it appears clear that it must be limited to the rights granted and confirmed by the first section of the ordinance. It is placed at the end of the first section, appropriately for such purpose. Certain rights are both confirmed and granted by this section, and by its express terms the proviso is made to apply to "streets over which the right of way is hereby confirmed and granted." Again, by section 2 there are granted certain additional rights, including the right to construct its line on Post Office or Church streets westward to the western limits of the city. This is directly followed, just as in section 1, by the following proviso: "That the railway shall be constructed on one or the other of these streets within one year; otherwise to be forfeited." If the proviso in section 1 should be held to apply to the right, given in section 2, to curve from Ninth street into Avenue N, etc., the conclusion cannot be avoided that by the same reasoning it applies to all of the rights given in that section; and if this be true there was no necessity for the express proviso in section 2 with regard to the grant to construct the road over Post Office or Church streets. We think it entirely clear, by all rules of construction, that this language at the conclusion of section 1, requiring the right granted to be exercised in one year, was not intended to apply to the right granted in the second section, with regard to the

curve from Ninth street into Avenue N. Potter v. Robison, 102 Tex. 451, 119 S. W. 90.

[6] But what would be the legal effect if the ordinance be so construed as to condition the right given by section 2 to curve from Ninth street into Avenue N upon any degree of curvature appellant might determine, not less than 3 degrees, and the right also granted, by necessary implication, to cross certain streets and alleys in making such curve, upon the construction of the relocated line within one year from the date of the ordinance? We consider this question foreclosed by the decision of the Supreme Court in Galveston & Western Ry. Co. v. City of Galveston, 90 Tex. 398, 39 S. W. 96, 36 L. R. A. 33; s. c., 91 Tex. 17, 39 S. W. 920, 36 L. R. A. 44.

By section 10 of the ordinance of March 8, 1889, being the last section, it was provided as follows: "Section 10. That all the privileges, rights, grants, etc., under this ordinance shall be forfeited if the said railway company fails to extend and build their road across the bay within five years from the passage of this ordinance." By its original charter the Galveston Brazos & Colorado Narrow Gauge Railway Company, to whose charter rights appellant succeeded, was authorized to construct and operate a narrow gauge railroad. "commencing at a point within the limits of the city of Galveston, thence westwardly on Galveston Island on the most practicable route to cross West Bay," etc. In 1894 the city of Galveston instituted suit against appellant to have declared a forfeiture of all the rights and franchises granted by the ordinance aforesaid, under the provisions of section 10 of the ordinance, for and on account of the failure by appellant to construct its road across West Bay. Upon appeal from an adverse judgment of the Court of Civil Appeals against it, declaring the rights forfeited, the Supreme Court held that it was beyond the power of the city, in giving its assent to a railroad company to construct its line upon and across its streets and alleys, to attach to such assent a condition of forfeiture of such right as was sought in that suit, and denied the prayer of the petition. Galveston & Western Railway Co. v. City of Galveston, 90 Tex. 398, 39 S. W. 96, 36 L. R. A. 33.

The court reviewed at length the authorities, expressing its own conclusion as follows: "The time within which the railroad should be constructed to any given point, especially beyond the limits of the city of Galveston, was a subject entirely beyond the jurisdiction of the council of that city, and the provision in section 10 of the ordinance, requiring the railroad to be constructed across Galveston Bay within five years, is not sustained by any power contained in its charter, either express or implied. It is not denied that the state might have granted to railroad companies the right to occupy the streets and highways without any condition, therefore the superior authority over this subject rests with the state Legislature. The Legislature did, in clear and unambiguous terms, grant to railroad companies the right to occupy the streets of towns or cities, upon a condition that the consent of such city or town should be first obtained. When the city of Galveston gave its consent for the railroad company to construct its road over the streets of the city, the condition precedent prescribed by the Legislature was fulfilled, and the statutory right attached in favor of the railroad company. Applying the law of the state to the facts of the case, no cause of forfeiture exists, and the railroad company has acquired a right to use and occupy the streets of the city of Galveston in accordance with the laws of the state. But to the condition precedent prescribed by the statute the city of Galveston has attached a condition subsequent, the breach of which, it is claimed has the effect to annul the right acquired under the laws of the state. In this case the railroad company was in possession of the streets of the city of Galveston under a grant by the state upon a condition precedent, which had been fulfilled; to which the city answered that, although this is true, the ordinance of the city prescribed a condition, the breach of which destroyed the right of occupancy under the statute. This cannot be true, unless the ordinance of the city is superior to the statute, and the creature may become greater than the creator."

This was emphasized by the opinion of the court on rehearing; the court saying: "Our opinion in this case rests upon the ground that the state granted to the railroad company the right to occupy the streets of the city upon the condition precedent that the city should consent thereto, and that, when the city gave that consent, the right to occupy the streets vested in the railroad company, and its occupancy of such streets was by authority of the state. The city had no authority, in granting its consent, to attach a condition subsequent, which, in case of failure to comply, would defeat the right granted by the state which vested when the consent of the city was given."

It is insisted by appellee that this decision is not applicable, because the forfeiture was sought on account of the failure of appellant to construct its line to a point beyond the limits of the city, to wit, across West Bay. It cannot be supposed that the court would have failed to express in some way this view, if it had been intended to so limit the scope of the holding. The language is too broad to be thus limited. A careful reading of the opinion leads to the conclusion that the opinion was not rested, to any extent, upon this fact. The reasoning by which the court arrives at the conclusion so broadly announced would include with equal force a case such as is here presented, where the forfeiture is claim-

ed for failure to construct its line by appellant within the limits of the city. If the grounds upon which the conclusion of the court is based be sound, we can see no distinction between that case and this, so far as concerns this point. In D. & S. Ry. Co. v. St. L. S. W. Ry. Co., 96 Tex. 233, 72 S. W. 161, 201, the same doctrine is announced, We therefore conclude that, even if the forfeiture condition in section 1 of the ordinance applied to the right, granted by section 2, to curve from Ninth street into Avenue N, etc., it was beyond the authority of the city.

[7] We may as well dispose here of the contention of appellee that the right given to relocate its said connection was not binding upon the city until it was accepted, or acted upon by appellant, citing and relying upon the opinion of the court in D. & S. Ry. Co. v. St. L. & S. W. Ry. Co., supra, in which it is said: "When the assent of the city is given and acted upon, it cannot be recalled. When the city consents in due form to the use of any particular street or streets by a railroad company for right of way purposes, and the company accepts the privilege, the right becomes vested, fixed, and certain." Appellee's contention is based upon the fact that, even if this right was given by the ordinance in 1889, appellant continued to occupy and use the old connection for many years, and, in fact, never sought to make the relocation in the exercise of the right granted until about 1910. We admit that there is much force in this argument, which also applies to another contention of appellee, hereafter referred to, that the right given has been lost by failure to exercise the same within a reasonable time. In the case referred to, however, the right had been given by ordinance in 1887 to the St. Louis & Southwestern Railway Company (or its predecessor) to the construction of its road over East street from the point where the Texas & Pacific Railroad crossed said street to the southern terminus thereof. Previous to the institution of the suit referred to the said company had extended its railroad along East street from the southern terminus to within several hundred feet of its intersection with the Texas & Pacific Railroad, but had never attempted to occupy the remainder of the street. It was contended that by its failure to use this portion of East street the railroad company had lost the right to do so. A period of about 14 years had elapsed. It was held that by building its track upon a portion of East street the company must be held to have accepted the right granted to occupy the entire street to the extent originally granted.

The situation here presented is not so simple. It is true that it is alleged in the petition that appellant accepted the right granted by the ordinance to change the location of its line as is here proposed; but this may be taken as a legal conclusion, and, if it is rebutted by the facts stated, cannot be taken as such acceptance in disposing of the demurrers. But it is shown by the petition that its connection at the intersection of Avenue N and Ninth street was continually threatened by the encroachment of the gulf waters, and was in danger of complete destruction by the action of storms at any time, which would have operated as a complete destruction of appellant's line as a belt line around the city, connecting with the tracks of other roads east and west of the city. In addition to this was the ever-present danger that this part of its line lying immediately on the shore would be taken for the purpose of the erection of a sea wall for the protection of the city, authority to build which was given by an amendment of the charter of the city in 1887. In these circumstances it is substantially alleged that after the passage of the ordinance appellant went to work and constructed its line over the streets, or some of them, to the westward, the right to which had been granted by the ordinance, rehabilitated its track, and generally began to put itself in shape to carry out its purpose of the construction of such belt line of railway, and that this was done in reliance upon the right given to place its connection at Avenue N and Ninth street upon safer ground and beyond the danger of destruction. Under these conditions, which are much more fully stated in the petition, we are of the opinion that appellant must be held to have accepted this grant to relocate this connection, of such prime importance to the very existence of its road in every part.

[8] The right to make the relocation of its connection between Ninth street and Avenue N having been granted by the ordinance of March 8, 1889, and having been accepted by appellant, and not having been forfeited by the failure to construct this relocation within one year from the date of the ordinance, was not forfeited by failure to construct the same within a reasonable time from the date of the grant. We do not agree with appellant's contention that, if such limitation applies, such time did not begin to run until its original connection was destroyed by the storm of 1900. This contention is based upon the proposition that by the ordinance itself it was intended that such right should be exercised at any time in the future that the necessity might arise for establishing this relocation on account of the encroachment of the waters of the gulf and the building of the sea wall. This proposition we do not think tenable, as previously shown. But, conceding that the limitation of reasonable time applies, we do not think that the right has been forfeited by the lapse of such time. Reasonable time is a relative term, depending upon the attending circumstances affecting the doing of the

work. The circumstances relied upon to explain and excuse the delay in doing this work were fully stated in the petition, and need not be repeated here, and were, we think, sufficient to explain and excuse the delay. There is nothing in the allegations of the petition which would justify the conclusion that appellant had abandoned the right granted. Appellant had not shown, by continuing to use the old location, in the circumstances stated in the petition, that it had elected to use this location permanently, instead of taking advantage of the grant of the right to relocate it upon any degree of curvature not less than 3 degrees it might determine. If it had, after the passage of the ordinance, changed the location of this part of its line, and established it upon a smaller degree of curvature than the existing location, it might well be said that it would not be allowed to make a further change under the right granted in the ordinance; but that is not the case presented.

[9] But we do not think that appellee can claim that this right has been forfeited by failure to use it within a reasonable time for another reason. As we have shown, if the express limitation of one year in section 1 of the ordinance applied to this right granted by section 2, under the authority of Galveston & Western Ry. Co. v. City of Galveston, supra, it would be void. If, as was held in that case, the city could only give or refuse its assent, and could not provide for a forfeiture of the right, by failure to comply with such condition, it seems to us that it would logically follow that if, instead of providing for a forfeiture in case the road was not relocated under the assent given within one, five, or ten years, or any other period of time, the ordinance had provided for such forfeiture if it was not done within a reasonable time, the same result would follow, as we understand the opinion in that case, made entirely clear in the opinion on rehearing (91 Tex. 17, 39 S. W. 920, 36 L. R. A. 44) herein quoted. To have required the work to be done within a reasonable time, on pain of forfeiture of the right granted, "would have been to attach a condition subsequent, which, in case of failure to comply, would defeat the right granted by the state, which vested when the consent was given"; and this, the court says, the city had no authority to do. If the city had no authority to impose such a condition by the terms of the ordinance granting its assent, it would seem that, a fortiori, it could not now avail itself of such failure. Certainly a condition which the city had no authority to impose will not be implied.

[10] It is contended by appellee that the right, if granted, and if not lost by the failure to exercise it within one year, or within a reasonable time, has been exhausted by the continued use of the old location, and

the fourth assignment of error is addressed to this question. What we have said is probably sufficient to indicate our views upon this point. Appellant had never changed its old line under the grant of power to do so given by the ordinance, and cannot be said to have exhausted the power so given.

What we have previously said sufficiently disposes of the question presented by the fifth assignment of error. While it is true, as contended, that any number of lines may be run to connect the line on Avenue N with that on Ninth street by using two short curves, each of a greater degree of curvature than 3 degrees, connected by a tangent, and in this way it would be possible to leave the line at Ninth street and run a line to Avenue N that would run through the heart of the city, still it cannot be contended, as we have shown, that the right to so relocate the connection was given by the ordinance. Such line would have to keep within a 3-degree curve, which the proposed relocation does. We think it clear that such was the intention of the ordinance.

It follows that the first five assignments of error must be sustained, substantially. Our conclusions are:

1. The right claimed by the petition was given by the ordinance.

2. Such right has not been lost by the failure to relocate the line within one year.

3. Nor by failure to do so within a reasonable time.

4. Nor by the continuance to use the old location.

In fine, according to the allegations of the petition, the right is still existent, and appellant has now the right to construct its track on the proposed line. We understand appellee in its brief to say that, if this right to relocate exists, no objection to the proposed line is made.

The length of this opinion, which was unavoidable, precludes anything like an extended discussion of the remaining questions.

[11] Under the sixth assignment of error, it is contended by appellant that the order of the Railroad Commission of Texas, heretofore set out, conferred upon it the right here claimed without the assent of the city. There are two answers to this contention. The first is that said order does not in terms grant any such right. The right was granted to change the track from Avenue N into Ninth street upon any line appellant might select "upon which it may legally acquire the right of way." The only way it could acquire such right of way along or across any of the public streets or alleys of the city was to get the city's assent. The second answer is that there is nothing in article 4445, R. S., as amended by the act of 1901 (Acts 1901, p. 46), which would authorize the Railroad Commission to grant to appellant the right to occupy the public streets of the city for the purpose indicated without obtaining the

consent of the city as provided in article 4438. The assignment is without merit.

[12] We cannot agree with appellant's contention, presented in the seventh assignment of error, that the erection of the sea wall rendered a change in the location of the connection from Avenue N to Ninth street essential to the enjoyment of plaintiff's right to maintain and operate its railroad on Avenue N and Ninth street, and therefore appellant is in law entitled to a way of necessity, without the assent of the city, across the streets, avenues, and alleys inside of, and north of, the sea wall. This contention is supported by appellant and combated by appellee with much force and ability, but we do not think it is sound. There is no question that by the erection of the sea wall appellant's line is cut in two, and its very existence as a belt line around the city, connecting with other railroads, east and west, is practically destroyed. But if the city, and not the county, had erected the sea wall, that would not, in our judgment, require the city to furnish appellant with the right of way across its streets for the location of its line of connection at a different place. This would, in effect, ingraft upon article 4438 an exception which the Legislature has failed to provide for. The provisions of this section are plain and emphatic, and no contingencies are mentioned, or hinted at, under which a railroad company would be authorized to build its railroad along or across any streets of a city without first having obtained its assent thereto. Neither the city nor the county could appropriate any part of appellant's track for the purpose of the erection of a sea wall without making compensation therefor; but such compensation would have to be in money, and if the city, instead of the county, had made the appropriation, it could not be required to make compensation in kind by furnishing another way in place of that taken. We have examined the authorities cited by appellant in support of its contention, especially the case of Lusby v. K. C., M. & B. Ry. Co., from the Supreme Court of Mississippi, reported in 73 Miss. 369, 19 South. 241, 36 L. R. A. 510; also, from the same court, State v. Mobile, J. & K. C. R. R. Co., 86 Miss. 172, 38 South. 732, 122 Am. St. Rep. 277. It is not a question of charter powers of a railroad company. We quote from the first of the cited cases: "If some appalling cataclysm should swallow in a yawning chasm the right of way, roadbed, and track, and leave a bridgeless gulf where solid earth had been, then, in this and other like cases, the deviation of the line from its original location would be within the implied powers of the charter, because to relocate and reconstruct to the extent indicated would be absolutely necessary in order to the accomplishment of the ends for which the corporation was created." But we are constrained to hold, in view of the plain and positive provisions of article 4438, that, even in the circumstances stated, a railroad company would not have the right, without the assent of the city, to appropriate any part of its streets for a new line, to any extent whatever. The law is so written, and it is for the Legislature and not the courts to provide otherwise.

Having held that by the express terms of the ordinance of 1889 the appellant had the assent of the city to reconstruct its line as proposed, which it has not lost, it becomes unnecessary to pass upon the eighth assignment. For this reason, in fact, the seventh assignment, heretofore discussed, became immaterial.

The ninth and tenth assignments do not need to be discussed further than has already been done.

[13] Under the eleventh assignment the proposition is stated that the refusal of the city to give its assent to the proposed relocation is an arbitrary exercise and abuse of its control and authority over its streets, and an unnecessary interference with, and obstruction of, appellant's vested right in and along Ninth street and Avenue N, to prevent a reconnection of the separate parts of its line, not of appellant's own volition, but forced upon it by necessity. The situation is this, as alleged in the petition: Appellant has the right to construct and operate its railroad upon and across every street in the city to which the city's assent has been given. It can run its cars from Avenue A to the sea wall on Ninth street, and from the sea wall along Avenue N and all the other streets named, even if it should be held that it had no right, without the city's consent, to relocate the broken connection as desired. This right it is beyond the power of the city to take away. But if it had not assented to the relocation of the broken connection, although the effect thereof would be to destroy the value of the road as a whole, and no matter how arbitrary such action might be, or what the motive or purpose might be, under the law as it now exists there is no power in the court to compel the city's assent, or to authorize the use of its streets for the purpose required, without its assent. If the assent of the city had not been given by the ordinance referred to, appellant would be entirely without remedy from the courts. Independent of this ordinance, appellant has no vested right to make this relocation and could get no relief from article 1, § 19, of the Bill of Rights of the state of Texas, or the fourteenth amendment of the Constitution of the United States, nor from section 16, art. 1, of the Constitution of Texas, or section 10, art. 1, of the Constitution of the United States, with regard to the impairment of the obligations of contracts. This disposes of the questions presented by the remaining assignments of error, which, according to the views expressed

in disposing of the first five assignments, are immaterial to the disposition of the appeal; but we have been requested by appellant, in the event the judgment should be reversed and the cause remanded, to pass upon all the questions raised.

[14] We cannot agree with the contention of appellee that, if the ordinance had granted the right to make this relocation of appellant's line, it was beyond its charter powers to do so. By the express terms of the amended charter of 1889 appellant was given the right "to curve into and from any and all of the streets and avenues at any point or points it may select."

[15] It is further contended by appellee that the appellant had no right to purchase the rights, franchises, and properties of the old Galveston, Brazos & Colorado Narrow Gauge Railroad Company, nor the Texas & Mexican Railroad Company, and the case of G., C. & S. F. Ry. Co. v. Morris, 67 Tex. 692, 4 S. W. 156, is cited in support of this contention. Even if the principle announced in the case be applicable, appellant does not get the right here asserted solely from having acquired the rights and franchises of the former roads. The right was confirmed and granted to it by the ordinance, and if it had in fact never acquired the rights and properties of the original road, it would not have affected the right here claimed. The ordinance also gives the right to build either a narrow or broad gauge road, or both.

It follows, from what we have said, that the court erred in sustaining the general demurrer and such of the special demurrers as are material. If, upon another trial, the appellant should establish the material allegations of its petition referred to in the first five assignments of error, it would be entitled to the injunction prayed for. The judgment is therefore reversed, and the cause remanded for a trial in accordance with this opinion.

Reversed and remanded.