GALVESTON WHARF COMPANY v. GULF, COLORADO & SANTA
FE RAILWAY COMPANY.

No. 7974.

1. **Charter—Right to Use Streets—Construction.**—Under the ordinary rules applied in the construction of laws and contracts, the specific mention of certain turnouts, switches, and constructions would be interpreted to exclude others, and public grants are to be strictly construed. If there is doubt as to the extent of the grant the doubt is resolved in favor of the public.

2. **Same.** — Upon conceded rules of construction, the act of the State Legislature and of the city council of Galveston granting the wharf company the right to construct

and operate a railway along Avenue A of said city, not being exclusive, and naming certain connections on the north, the track having been built along the center of the street did not authorize the construction of sidetracks and switches on the south of the track, to the exclusion of another railway company authorized by act of the Legislature and license of city council to build along the street south of the track of the wharf company.

3.  **Findings Upon Immaterial Issues.**—The finding of facts by the court upon immaterial issues, although not pleaded or proved, is no ground for reversal on appeal.

4.  **Vested Right.** — The wharf company having no right to place switches, etc., along Avenue A south of its track, its construction of such switches, etc., and their use would not vest in the wharf company any right to occupy such part of the street; and no right would be invaded by an order for the removal of such works as obstructions, so as to allow the construction of a track by another company having the right to occupy such line.

5.  **Taking Private Property.** —The order to remove the switches, etc., which were south of the track operated by the wharf company was not an appropriation of such switches so as to require compensation to be made.

6.  **Right to Use Public Street.** —That the wharf company had reclaimed the Avenue A at its own expense did not make it the owner of the street, nor deprive the city to any extent of its power over it.

7.  **Same.**—As the wharf company had never acquired authority to extend its sidetracks to the factories and warehouses situated on the south side of the street, that it may lose valuable trade built up by its railway tracks connecting with them gives no right to occupy the streets covered by its tracks nor compensation for their removal.

APPEAL from Galveston.  Tried below before Hon. Wm. H. Stewart. The opinion states the case.

*Willie, Mott & Ballinger,* for appellant.—1.  The question, which was brought fairly before the court for its adjudication, was upon the rights of appellant under its charter from the State and the ordinance of the city, and it was not proper or competent for the court to inject into the case a question of public convenience for the purpose of determining such rights.  1 Wood's Ry. Law, sec. 645, and authorities there cited.

2.  A railway company having authority to build a road is vested with a reasonable discretion as to what turnouts, sidings, and switches are necessary for its safe and convenient operation, and this decision can not be tested by the question whether it is more or less inconvenient to the community for another road to be constructed at a different point. 1 Wood's Ry. Law, secs. 224, 225; Mills on Em. Dom., sec. 62; Iron Works v. Railway, 5 Allen, 221; Parke's Appeal, 64 Pa. St., 137; Supervisors v. Gerrel, 20 Grat., 484; Railway v. Young, 38 Pa. St., 175; Ladd v. Railway, 6 Exchr., 143; Lodge v. Railway, 8 Pa. St., 345; Buckner v. Railway, 14 Am. and Eng. Ry. Cases, 447; Wilkinson v. Railway, 6 Am. and Eng. Ry. Cases, 513; Errington v. Railway, Id., 562; Railway v. Railway, 10 Am. and Eng. Ry. Cases, 444.

3.  As to whether the city of Galveston had sufficient railway or other facilities for properly handling freight passing through its port

was not an issue which could in any wise affect the rights of the plaintiff, and it is evident that the court laid great stress upon this fact, which was not an issuable one. The sole question was, What were the rights of the appellant under its charter and the ordinance of the city?

4. The court erred in its conclusions of fact to the effect that to enable the defendant to construct and operate its track it was necessary that all tracks, sidetracks, and switches now owned or controlled by the Galveston Wharf Company situated in or upon said Avenue A on the south side of its main track should be removed from said street, because the evidence showed that the proposed track of the defendant could be laid across plaintiff's sidetracks on the south side of its main track, and could be successfully operated without the removal of plaintiff's said sidetracks and switches.

5. The court erred in its conclusion of fact that the tracks of the plaintiff are placed on Avenue A without any right or authority, because the evidence showed that the plaintiff did have full right to place, use, and operate said sidetracks and switches.

6. The court erred in its conclusions of fact, in that it failed to find the plaintiff had full right and authority to use any portion of Avenue A with its main tracks, sidings, and switches that were useful, necessary, or proper; because the evidence showed that they did have such authority, and that all the switches and sidetracks south of its main track on Avenue A were necessary, useful, and proper. 1 Wood's Ry. Law, sec. 645; Mills on Em. Dom., sec. 62.

7. The court erred in its conclusions of fact, in that it failed to find that the proposed track to be laid on the south side of the main track of plaintiff on Avenue A, and across its sidings and switches, could be operated without removal of plaintiff's tracks and switches; because the evidence showed that with a slight readjustment of plaintiff's sidetracks it could be laid across them and safely operated.

8. The court erred in its conclusions of law to the effect that the Galveston Wharf Company, by constructing its main track near the center of Avenue A and sidetracks and switches to the north thereof to its wharves on Galveston Bay, exhausted all the rights, powers, and authority conferred upon it by the acts of the Legislature and the ordinance of the city of Galveston, and that all tracks constructed by plaintiff on the south side of the main track were constructed without any right, permission, or authority from either the State of Texas or the city of Galveston; because the act of the Legislature and the various ordinances of the city of Galveston did give to plaintiff the right and authority to use so much of Avenue A for its tracks, sidetracks, and switches as might be proper, useful, or necessary. Railway v. Lovejoy, 8 Nev., 100; Railway v. Devancy, 42 Miss., 555; 104 Illinois, 323; Fischer v. Railway, 10 Am. and Eng. Ry. Cases, 14; Railway v. Railway, 5 Am. and Eng. Ry. Cases, 389.

9. The court erred in decreeing and ordering that plaintiff's side-tracks and switches south of its main line on Avenue A should be removed for the purpose of allowing defendant to place a track thereon, because the evidence showed that the proposed track of the defendant would have been constructed across plaintiff's sidetracks and switches with very little modification to the latter, and without injury to the plaintiff, and without detriment to the defendant's using of said proposed track, and that the construction, operation, and use of defendant's proposed track across said sidetracks and switches would be good railroad engineering.

*J. W. Terry,* for appellee.—1. The finding of the court that railway tracks could be constructed on Avenue A with less damage and inconvenience to the property of the citizens of Galveston than on any other street could not prejudice the appellant. Assuming that such finding was immaterial, it is well settled in this State that a judgment will not be reversed on account of immaterial findings provided the material findings are sufficient to support the judgment. Andrews v. Key, 77 Texas, 35.

2. The court did not err in concluding that it was necessary that all sidetracks of the wharf company on the south side of Avenue A should be removed to enable the appellee to exercise the rights granted by it in said street. The question was not one of absolute physical necessity, but of reasonable and practicable necessity in view of all the conditions and the respective rights of the parties.

3. The court did not err in its conclusions of law and fact to the effect that the wharf company did not have the legal right to construct its sidetracks on the south side of its main track in Avenue A, and that it had exhausted all of its rights under the act of the Legislature and ordinance of the city by constructing its main track near the center of Avenue A and sidetracks and switches to the north thereof to its wharves on Galveston Bay, and that all tracks constructed by the wharf company on the south side of its main track on Avenue A were constructed without any right, permission, or authority either from the State of Texas or the city of Galveston.

4. The authority to construct a railway track along Avenue A, to cross all streets and alleys on the route of such railway, and to build switches from said railway to each of the wharves of said company, does not confer the right to construct sidetracks or switches on the opposite side of the railway from said wharves for the purpose of reaching mills and warehouses in no way connected with such wharves. A grant from the public to a corporation or individual is strictly construed in favor of the public, and no rights will be acquired thereby except such as are necessarily carried by the fair import of the language used. The express grant of the right to construct switches to the wharves ex-

cludes the idea of any intention to grant right to construct switches elsewhere. Wright v. Nagle, 101 U. S., 796; Street Railway v. Street Railway, 65 Texas, 502; Railway v. Reed, 64 N. C., 155; Sprague v. Birdsall, 2 Cow., 419; Bridge Co. v. Improvement Co., 32 N. J. Eq., 81; Railway v. Briggs, 22 N. J. L., 63; Stormfeltz v. M. T. Co., 13 Pa. St., 554; Railway v. Canal Commissioners, 21 Pa. St., 22; Mayor, etc., v. Railway, 26 Pa. St., 355; Dugan v. Bridge Co., 27 Pa. St., 303; Commonwealth v. Railway, 27 Pa. St., 339; Commonwealth v. Railway, 52 Pa. St., 506; Bridge Co. v. Ferry Co., 29 Conn., 222; Currier v. Railway, 11 Ohio St., 228; Mayor, etc., v. Railway, 7 Ga., 229.

HENRY, ASSOCIATE JUSTICE. — In the year 1870 the Galveston Wharf Company obtained from the Legislature a charter containing the following provisions:

"Section 1. Be it enacted by the Legislature of the State of Texas, that the Galveston Wharf Company shall have the right to construct, own, and operate a railway, commencing at or near the present terminus or depot of the Galveston, Houston & Henderson Railway, and running thence to the new wharf owned by said company, and thence along Avenue A until it has crossed Bean's wharf, and thence along Avenue A or a line to the north thereof to the east end of Galveston Island, and to cross all streets and alleys on the route of such railway, and to build switches from the track of said railway to each of the wharves of said company; provided, that whenever said railroad crosses Bean's Wharf on Avenue A it shall run switches, turnouts, side switches, etc., to the T head thereof, if requested by the owners of said wharf, and shall furnish all necessary and proper rolling stock upon said switch at Bean's Wharf to enable said wharf to receive with dispatch all articles shipped to said wharf, or coming to said wharf for shipment, and to load and transport all articles landed at said wharf; and shall deliver and remove the same with the same dispatch and upon the same terms and conditions that articles are received, taken, and removed from any other switch at any other wharf along the line of said road; and in case it should be necessary to run across any private property for the construction of said railway, the said company shall have the right to appropriate and condemn the same upon the payment of the fair value thereof, by agreement with the owner or owners, or in conformity with the general railway law of this State.

"Sec. 2. That said company shall have the right to make connection with the Galveston, Houston & Henderson Railway in case of any change in the terminus or depot of said railway, and with any and all other railways which may at any future time enter the city of Galveston.

"Sec. 3. That said company shall have the right to carry and transport persons and freight on said railway and charge and receive reasonable compensation therefor, and to run their cars over any con-

necting railway in accordance with the general railway law of the State."

In pursuance of the act of the Legislature the Galveston city council passed the following ordinance:

"GALVESTON, September 23, 1870.

"Whereas, at a recent session of the Legislature of the State of Texas a law was enacted, entitled 'An act granting to the Galveston Wharf Company the right to make railway connection with their wharves and the railways entering the city of Galveston,' passed August 4, 1870; therefore,

"Be it ordained by the mayor and aldermen of the city of Galveston, in council convened, that the right of way for said railway is hereby granted, and that the said Galveston Wharf Company may have and exercise all the rights, privileges, and powers conferred by said act; provided, that said road shall be constructed in such manner as not to obstruct the free passage of the streets on land south of Avenue A, and that the city authorities shall at all times have such authority as will compel a due observance of this condition."

Avenue A is a street seventy feet in width, with sidewalks of sixteen feet in width on each side, leaving a width of nearly thirty-eight feet between the sidewalks. The bay and the wharves of the appellant are on the north side of Avenue A, the general course of which is east and west. The wharf company constructed the main line of its railway along the center of said street, or slightly north of its center, in the year 1870.

At some date not specified, but before the 20th day of February, 1888, the wharf company constructed switches and sidetracks on the north side of its main track to be used in the operation of the railway, and others on the south side thereof for the purpose of reaching and accommodating certain large establishments situated south of said street.

On the 20th of February, 1888, appellee procured an ordinance from the city of Galveston granting it a right of way along Avenue A for the construction, operation, and maintenance of a railway. Under the authority of this ordinance appellee, having a charter from the State of Texas, commenced in the early part of February, 1889, to construct a track along Avenue A over and across some of appellant's sidings, and for this purpose was tearing up a portion of said sidings and tracks of appellant on the south side thereof, when appellant obtained an injunction, on the 12th of February, 1889, restraining appellee from prosecuting the work and from interfering with the tracks and sidings of appellant. The petition for injunction is full, setting out in detail all of the appellant's rights, together with copies of its charter from the State, the ordinance from the city, etc. The appellee answered, denying the right

of the appellant to lay any tracks or sidings south of its main track, in the center of Avenue A, pleading its own charter and the ordinance of the city aforesaid, praying for the removal of all such sidings and switches, and seeking a dissolution of the injunction that it might be permitted to complete its track on the said street. The case was tried by the judge without a jury, who dissolved the injunction, directing the appellant to remove or cause to be removed within thirty days all of said tracks, switches, turnouts, trestle work, and all other property connected therewith, situated in, upon, and along said Avenue A, on the south side of its main track, and in the event of its failing to do so, giving to the appellee the right to remove or cause to be removed the said sidetracks, switches, etc., and dismissed the petition. Appellant filed motion for new trial, and also filed motion to reform judgment. The court overruled both motions. At the request of appellant the judge filed conclusions of law and fact separately.

The judgment excepted from its operation the following: "A certain track of the plaintiff which runs across the Strand, or Avenue B, of said city, and across block 694 of said city, and unites with the main track of the plaintiff near the intersection of Avenue A and Thirty-fourth Street, it being the track that connects the main track of the Galveston Wharf Company with the tracks of the Galveston, Houston & Henderson Railway Company, and a certain track which runs across Avenue A and block 699 of said city and unites with the western terminus of the plaintiff's main track in Avenue A, at about and a little west of the intersection of Avenue A and Thirty-eighth Street, it being the track which connects plaintiff's main track with the tracks of the defendant."

The important question in the case is, Does the act of the Legislature confer upon the wharf company the right to construct or maintain sidetracks and switches south of its main track?

We think the answer must be that it does not.

Neither the Legislature nor the city conferred upon that corporation the exclusive use of the street for railway or any other purposes. Gulf City Street Railway v. Galveston City Railway, 65 Texas, 502. The evident and sole purpose of the act was to enable the corporation to construct and operate a railway in connection with the wharves lying north of it. It was not contemplated that authority to construct the main road along the street would include authority to construct switches, turnouts, or sidetracks, and therefore they were expressly provided for; but such provision was made for them only on the north side of the road and in connection with its own and another wharf on that side of the street occupied by its main track. The only other connections authorized were those with other railways mentioned in the second section of the act. Under the ordinary rules applied in the construction of laws and contracts the specific mention of certain turnouts, switches,

and connections would be interpreted to exclude the right to construct others. 2 Pars. on Con., *516; Brown's Legal Maxims, 626.

With regard to laws of the character of the one now in question the rule is still more unfavorable to the claim of the wharf company. "Public grants are to be strictly construed. Contrary to the rule adopted in the case of private contracts, they are to be taken more strongly against the grantee and in favor of the public. If there be a doubt as to the extent of the grant the doubt is resolved in favor of the public." Bridge Co. v. Improvement Co., 13 N. J. Eq., 18; 2 Pars. on Con., *506, *507.

Other questions presented by the assignments of error for our consideration are substantially as follows:

1. That the findings of the court to the effect that railway tracks could be constructed along Avenue A with less damage than upon other streets, and that existing facilities on the water front of the city of Galveston are inadequate for promptly handling the freight passing through that port, were not issuable facts and were not sustained by the evidence.

We think the findings complained of are not unsustained by the evidence, but if they were neither alleged in the pleadings nor proved, they still are not of sufficient importance to affect the result, and may be disregarded. Andrews v. Key, 77 Texas, 35.

2. That the court erred in concluding that all sidetracks and switches south of the main track owned by the wharf company should be removed, because the evidence showed that the defendant's track could be laid across them and successfully operated without their removal, or at least with a slight readjustment of the wharf company's sidetracks, and without injury to the wharf company.

3. That the court erred in its conclusions of law, because the wharf company, having authority to lay sidetracks on the south side of the street, did construct, operate, and maintain them long before the defendant railway company ever had permission to lay a track on the street, and because having done so without objection it had a vested right therein; that it had so used and maintained said tracks for a period of more than ten years.

4. That the court erred in ordering the removal of the wharf company's sidetracks and switches for the benefit of the defendant railway company without making an allowance to the wharf company for the value thereof, because it was a taking of private property without compensation and without allowing to it the cost of filling and trestling made by it on Avenue A for the purpose of laying tracks on that street.

We do not find in the record any evidence that the tracks ordered to be removed had been maintained for ten years before the act of the 4th day of July, 1886, or for that long before the institution of this suit. As the tracks were constructed without authority the wharf com-

pany can not be held to have acquired a vested right to maintain them, and without such right it has no just ground to complain because it is required to remove them. Even if the tracks could be so maintained as to enable the railway company by the exercise of increased care to operate its road along the street, it can not be denied that they are an obstruction to some extent to such operation, and as such it was a proper exercise of the authority of the city to grant to another the use of the street occupied by them, including the right to remove them. As the wharf company had no right to maintain the obstructions in the street, it could not be wrong to require them to be removed.

The railway company did not propose to take or convert to its own use the track or material of the wharf company, and there could not therefore be any just reason for requiring it to make compensation therefor. The fact that the wharf company had improved and reclaimed the street at its own expense did not make it the owner of it, nor deprive the city to any extent of its power over it. The railway company had the right to enjoy and use the privileges conferred upon it by the city upon such terms as the city might impose, and without being under an obligation to compensate the wharf company therefor.

The finding of the court that the two railways could be safely operated upon the street is complained of. We think that the conclusion is supported by the evidence. It was a question properly addressed to the city council in the first place.

As the wharf company had never acquired authority to extend its sidetracks to the factories and warehouses situated on the south side of the street, it can not successfully complain of its being deprived of continued access to them, and the fact that their trade may fall into the hands of the railway company can not be treated by us as cause for reversing the judgment.

The time that was given the plaintiff to voluntarily remove its tracks having expired during the pendency of this appeal, the judgment of the District Court will be reformed in that respect so as to allow the plaintiff thirty days from this date for that purpose.

The judgment of the District Court will be in all other respects affirmed.

*Affirmed.*

Delivered June 23, 1891.