GALVESTON & W. RY. CO. v. CITY OF
GALVESTON. (No. 6842.)*

(Court of Civil Appeals of Texas. Galveston.
April 20, 1916. Rehearing Denied
May 18, 1916.)

1. RAILROADS ⊚⇒76—LOCATION OF TRACK—
CITY STREETS—STATUTES.

Where the charter of a railroad authorized
it to construct and operate a continuous line
along Ninth street, in the city of Galveston,
thence into and along Avenue N, etc., to which
the city assented by ordinances granting the
right to locate within certain limits its line
connecting the streets, the railroad and its suc-
cessor had no implied right to relocate its line
of connection between Ninth street and Avenue
N on and across other streets whenever it be-
came necessary to do so to avoid the sea wall
and to preserve the continuity of its line of
railroad, especially in view of Rev. St. 1911, art.
6497, providing that no railroad shall be con-
structed upon any street of any incorporated
city without its assent.

[Ed. Note.—For other cases, see Railroads,
Cent. Dig. §§ 195, 196, 199-201; Dec. Dig. ⊚⇒
76.]

2. RAILROADS ⊚⇒79—LAYING TRACK—EN-
JOINING INTERFERENCE—PLEADING.

In suit by a railroad to enjoin the city
of Galveston from interfering with the lay-
ing of its track to form a continuation between
its tracks on two streets, where the city's an-
swer to the railroad's fourth amended petition
and its answer to the road's trial petition set
up that if, by city ordinance, the railroad had
the right to select the location of its track, such
track had been located differently from the lo-
cation presently selected by the railroad, the
city's pleadings raised the issue whether the
right granted under the ordinance had been
exercised and exhausted by the railroad.

[Ed. Note.—For other cases, see Railroads,
Cent. Dig. §§ 192, 193, 202, 203; Dec. Dig. ⊚⇒
79.]

3. PLEADING ⊚⇒93(1)—ANSWER SETTING UP
INCONSISTENT MATTERS—STATUTE.

Under Vernon's Sayles' Ann. Civ. St. 1914,
art. 1902, providing that the answer may include
several matters, etc., defendant may plead as
many inconsistent matters of defense as he de-
sires, provided he files them in due order of
pleading.

[Ed. Note.—For other cases, see Pleading,
Cent. Dig. § 189; Dec. Dig. ⊚⇒93(1).]

4. RAILROADS ⊚⇒76—RELOCATION OF TRACK
—POWERS UNDER ORDINANCE—EXERCISE—
"RIGHT OF WAY"—"PASSWAY EASEMENT"—
"FRANCHISE."

Where the city of Galveston, by ordinance
of March 8, 1889, authorized a railroad to re-
locate and reconstruct its line over Ninth
street into Avenue N at any degree of curvature
not less than three degrees, such grant was not
that of a railroad "right of way," but of a
"passway easement" or "franchise" only, and the
act of the railroad in relocating its line in 1891
from the center of Ninth street onto the side-
walk thereof, at a point to avoid encroachments
of the sea, was an exercise and exhaustion of
the road's right under the ordinance.

[Ed. Note.—For other cases, see Railroads,
Cent. Dig. §§ 195, 196, 199-201; Dec. Dig. ⊚⇒
76.

For other definitions, see Words and Phrases,
First and Second Series, Franchise; Right of
Way.]

Appeal from District Court, Galveston
County; Clay S. Briggs, Judge.

Suit by the Galveston & Western Railway

Company against the City of Galveston.
From a judgment for defendant, plaintiff ap-
peals. Affirmed.

Walter Gresham, of Galveston, and T. D.
Gresham, of Dallas, for appellant. Mart H.
Royston, I. Lovenberg, Jr., and P. A. Drouil-
het, all of Galveston, for appellee.

LANE, J. This is a suit brought by the
Galveston & Western Railway Company to
enjoin the city of Galveston and its govern-
ing body from interfering with the laying of
track to form a connection between its track
on Ninth street and its track on Avenue N
north of the sea wall and its right of way in
the city of Galveston. This is the third ap-
peal in this case. On the ——— day of No-
vember, 1910, said railway company appealed
from an order of the trial court refusing a
temporary injunction. On this appeal this
court, by an opinion reported in 137 S. W.
724, affirmed the judgment of the trial court.
The main case was again called for trial on
the 28th day of November, 1911, when the
trial court sustained general demurrer to
plaintiff's petition, and upon plaintiff declin-
ing to amend the cause was dismissed. On
appeal from such judgment of dismissal this
court, in an opinion reported in 155 S. W.
273, held that the trial court erred in sus-
taining said general demurrer, and reversed
and remanded the cause for trial.

In the opinion last referred to Judge Reese
has made a full and complete statement of
the nature of the cause, covering six pages of
the Southwestern Reporter, which is still ap-
plicable, and, if it were not for the state-
ment made by the Supreme Court in the case
of St. Louis Southwestern Ry. Co. of Texas
v. Alexander, 172 S. W. 709, which is that the
Supreme Court will not entertain a case
where the Court of Civil Appeals in its opin-
ion makes no statement of the case other
than to refer to a statement made by a Court
of Civil Appeals of the case upon a former
appeal of such case, by reference to the style
and number of the former opinion and the
volume and page where it is to be found, we
would refer to said statement as now applica-
ble to this case and not restate the case; but,
in view of such holding of the Supreme Court,
we here substantially reproduce said state-
ment as preliminary to the decision upon the
questions of law presented by this appeal,
to be followed by such further reference to
the particular allegations involved in the sev-
eral assignments of error as may be neces-
sary.

The Galveston, Brazos & Colorado Narrow
Gauge Railway Company was chartered by
special act of the Legislature of February 2,
1875. Sp. Laws 1875, c. 12. By the charter
the company was authorized to construct and
operate a continuous line of railroad, com-
mencing at any point within the corporate

limits of the city of Galveston; thence westwardly on Galveston Island on the most practicable route to cross West Bay; thence across the Brazos river, in Brazoria county; thence up Colorado valley, on either side of the Colorado river, passing through Matagorda, Wharton, Colorado, Fayette, and Bastrop counties near to the city of Austin—said railroad to be of three-foot gauge. Under this charter this company located and built in 1875 a narrow gauge railroad beginning on Avenue A near Tenth street; thence curving into Ninth street, and thence on Ninth street to a point near Avenue N; thence into and along Avenue N westwardly to a point near Thirty-Seventh street; thence into and southwardly along Thirty-Seventh street to a point near Avenue T; thence into and westwardly along Avenue T to Fifty-Seventh street; thence south and west to and across Fifty-Seventh street to the western limits of the city; thence southwardly and westwardly to Lafitte's Grove, on Galveston Island, about 12 miles from the city limits. This road was operated by the company until about April, 1881, about which time it was sold under deed of trust to one Henchman, by whom it was sold and conveyed, about July 1, 1881, to the Texas & Mexican Railway Company, which was chartered under the general laws of the state on March 12, 1882, with power to own and operate said railroad, and by which company said road was operated until 1888.

The city of Galveston, by ordinance adopted in 1881, granted to this last company the right to occupy, among other streets mentioned in the ordinance, Ninth street and Avenue N with the railroad theretofore constructed by the Galveston, Brazos & Colorado Narrow Gauge Railway. In February, 1888, the properties, rights, and franchises of the Texas & Mexican Railway Company were acquired by sale under judgment and execution by the Galveston & Western Railway Company (the present plaintiff), which company was created under general laws on December 9, 1887, and was empowered by its charter "to build and acquire, or partly build and partly acquire, a railroad, commencing at a point on Galveston Bay in Galveston city, Galveston county, Tex.; thence through the streets and public highways of said city to a point in said city of Galveston at or near Carankaway Reef westward of the city, with the right to provide for other extensions and branches, or other branches in the manner provided by law." It was alleged that under and by virtue of the aforesaid purchases and transfers plaintiff acquired and succeeded to all and singular the railroad rights, properties, and franchises belonging to its said predecessors.

In November or December, 1888, the railroad, then a narrow gauge, by transfers of plaintiff's capital stock, passed from the original corporation into the control of certain Galveston parties, when it was determined to broaden the gauge to standard and to rearrange its tracks in the city of Galveston. In order to be able to further the purpose of holding an exhibition at Centennial Park, in the western part of the city, as well as for furnishing terminal facilities for another road then contemplated, plaintiff, before March 8, 1889, broadened the gauge to standard, by adding a third rail along Ninth street; thence crossing into and extending along Avenue N to a point, where it passed out of Avenue N. The connection from Ninth street into Avenue N as originally located in 1875 by the Galveston, Brazos & Colorado Narrow Gauge Railway Company was north of the sand hills and several hundred feet from the Gulf of Mexico; but by gradual erosion the Gulf waters encroached upon this connection, and in 1886, while the road was being operated by the Texas & Mexican Company, the same was damaged by storm, but was immediately rebuilt upon a trestle. In 1889, as the result of further erosion, the trestle was extended by plaintiff along the gulf shore near the water's edge. This trestle was again damaged in 1896, and by erosion, and as the result of the great storm of 1900, was entirely washed away, and the land upon and near which it was built became, and has been continuously since, submerged by the waters of the Gulf. The Gulf waters encroached upon the shore line opposite the intersection of Ninth street and Avenue N about 400 feet from 1875 to 1889. There was a further slight encroachment from 1889 to 1899, and a further encroachment of more than 175 feet from 1899 until September, 1900 (the date of the storm aforesaid). The effect of such encroachments was to cause the waters of the Gulf to entirely cover the point of the intersection of said Ninth street and Avenue N, and at no time since such encroachment has there been any actual connection of said two streets.

By act of the Legislature of March 30, 1887 (Sp. Laws 1887, c. 6), the charter of the city of Galveston was amended for the purpose of authorizing the construction of a sea wall or breakwater, and the issuance of bonds and levying a tax to pay for the same. This act, as shown by the emergency clause, was predicated upon the necessity of a speedy construction of such sea wall for the protection of the city.

Plaintiff was constructing and had in contemplation a three-rail combination narrow gauge and standard gauge railroad in the city of Galveston, and the curves in the original lines from Ninth street into Avenue N, from Avenue N into Thirty-Seventh street, and from Thirty-Seventh street into Avenue T, and particularly the last two, were upon sharp curvatures intended for narrow gauge equipment. With a view of acquiring the right to a continuous and unobstructed line along Ninth street, and thence into and west-

wardly along Avenue N, plaintiff made application to the city council for a confirmation of the rights and franchises in its streets and highways heretofore exercised by the Galveston, Brazos & Colorado Narrow Gauge Railway Company, and in addition to grant to plaintiff its assent to certain other rights and franchises, including the right at any time thereafter to relocate its connection from Ninth street to Avenue N should encroachment of the Gulf render it impracticable to maintain the connection in the original location, or should the sea wall be constructed along the Gulf shore and intersect the same. Thereupon the city, by its governing body, on March 8, 1889, enacted an ordinance which is fully set out in the plaintiff's petition, but only the material provisions of which are here set out, and are as follows:

"Section 1. That the rights of way heretofore granted in the city of Galveston to the Galveston, Brazos & Colorado Narrow Gauge Railway Company and to the Texas & Mexican Railway Company on Ninth street from Avenue A to Avenue N, thence along Avenue N to Thirty-Seventh street, thence along Thirty-Seventh street to Avenue T, thence westwardly along Avenue T to Fifty-Fifth street, with the right to curve south and west at any point west of Fiftieth street, be and the same are hereby confirmed. The right to construct, maintain, own and operate a railroad with either broad or narrow gauge tracks, or both, and with such side tracks, turnouts and switches as may be necessary, be and the same are hereby granted to the Galveston & Western Railway Company, as the successor of said railway companies, over and along the above-mentioned streets, and on Avenue N west from Thirty-Sixth street, with the right to curve northwardly from Avenue N at any point west of Fortieth street, into Forty-Third street, or at any street west of and parallel to Forty-Third street that said railway company may select and occupy, thence northwardly down the street selected, with the right to connect with tracks of the Galveston, Houston & Henderson Railway Company, and the Gulf, Colorado & Santa Fé Railway Company at any point west of Forty-Third street. That the said railway company shall construct, operate and maintain its railway on the streets over which the right of way is hereby confirmed and granted within one year from the date hereof; otherwise the right herein granted shall be forfeited.

"Sec. 2. The right is hereby granted to said railway company to curve from Ninth street into Avenue N, from Avenue N into Thirty-Seventh street, and from Thirty-Seventh street into Avenue T, upon any degree of curvature not less than three degrees which said railway company may determine upon, with the right to come into Avenue A and connect with any and all railroads now, or that may hereafter be constructed on that street, with the further right to curve into and construct, maintain, own and operate its railroad on Post Office street, or on Church street, from Forty-Third street westwardly to the western limits of the city. The said railway company shall construct their railway over Church or Post Office street, as in this section granted, within one year from date hereof; otherwise the right to build on said streets shall be forfeited. * * *.

"Sec. 8. That in the event said railway company shall proceed to construct, maintain and operate a railroad over the right of way herein granted, then any other railroad company desiring to participate in the ownership and operation of same may do so by paying an equal pro rata of the costs of said railroad over said right of way, and in case said railway companies cannot agree upon the cost of said railroad or upon terms satisfactory among themselves, then the same shall be determined by a board of arbitration consisting of one arbitrator to be appointed by the city of Galveston, and one arbitrator to be appointed by the railway company or companies owning or operating the same, and in case of disagreement of said arbitrators, they shall appoint an umpire to decide the matter; and should the said railway company or companies refuse to appoint an arbitrator when applied to, then in that case the city council shall proceed to appoint two arbitrators, who shall proceed to determine the matter as hereinbefore provided. It is the object of this section to make a general railroad over the right of way herein granted, to the end that all railway companies that may now or hereafter terminate in Galveston, so desiring, may acquire equal rights in the ownership and operation of said railroad."

Plaintiff accepted the rights and rights of way given and assented to by the ordinance, and immediately after its passage hurriedly extended its line to Centennial Park before the opening of the exposition in June, 1889, built a combination narrow and standard gauge three-rail railroad along Avenue A westward from a point near Thirty-Seventh street to Forty-Second street; thence curving into and extending along Forty-Second street southwardly along Avenue Q; and thence curving onto and extending along Avenue Q to Centennial Park. Within one year from the passage of the ordinance plaintiff constructed, operated, and maintained all of its tracks in the city of Galveston required by the ordinance to be constructed and operated within that time, including a track curving from a point near Forty-Second street and Avenue N into and northwardly along Forty-Third street, curving into Post Office street, and forming connection near Forty-Fifth street with the tracks of the Gulf, Colorado & Santa Fé Railroad and of the Galveston, Houston & Henderson Railroad; also a track from Centennial Park westwardly along Avenue Q to Fifty-Seventh street; thence southwestwardly across the city limits to a connection with the original line to Lafitte's Grove.

Thereafter, about May, 1890, plaintiff ceased to use and took up the track of the original narrow gauge lines on Thirty-Seventh street south of Avenue N; thence into and along Avenue T to Fifty-Third street; thence south and west to and across Fifty-Seventh street to the western limits of the city. Shortly after the passage of the ordinance referred to, to wit, on July 17, 1889, plaintiff amended its charter. A copy of the charter is attached to and made a part of the petition, but only the material parts of the same are here set out, as follows:

"This corporation shall be and is hereby invested with the right of locating, constructing, owning, operating and maintaining a railroad and telegraph line, commencing in the city of Galveston at a point on Avenue A; thence into and along Ninth street to Avenue N; thence along Avenue N to Forty-Third street; thence along Forty-Third street to Avenue Q; thence

along Avenue Q, curving southwestwardly to the western limits of the city of Galveston, with the right to curve into and from any and all of the streets and avenues, at any point or points it may select; thence southwestwardly to a point on its line as now constructed, south of lot No. 42, in section No. 1 of Galveston Island; thence westwardly down Galveston Island to a point near Carankaway Reef, with the right to build to and connect with any railroad running into said city," etc.

The gulf waters did not encroach upon its Ninth street and Avenue N connections so as to render it impracticable to maintain the same in its former location until after the great storm of 1900. Immediately after this storm the question of the erection of a sea wall began to be agitated. This sea wall was built in 1903. It was built by the county of Galveston, the city being financially unable to carry the burden; but its purpose and design was to protect the city of Galveston, its property and inhabitants, and the movement for its building was begun and actively instigated by the city of Galveston; the city council acting in concert with the commissioners' court representing the county. Immediately after the sea wall was constructed plaintiff selected the route of the proposed relocation of its line connecting the line on Avenue N and Ninth street. About the same time the city began the work of raising the grade of the city, and in connection with such filling operations excavated a canal 200 feet wide and 20 feet deep inside the sea wall and along the line selected by plaintiff for such relocation line, and continuously thereafter and until September, 1910, plaintiff's railroad along Ninth street, Avenue N, and Forty-Third street was affected by such grade-raising operations, and plaintiff was compelled at great expense to elevate its track upon temporary trestlework from 2 to 7 feet to place the same above the filling. As soon as practicable after the sections of the city through which its track lay were filled to grade plaintiff, between August and December, 1909, at an expense of more than $15,000 rehabilitated its tracks along Forty-Third street, thence eastwardly along Avenue N to the grade raising canal, and along Ninth street southwardly to the canal, when such work of reconstruction was held in abeyance pending the refilling of the canal, which was not completed until about September, 1910, when plaintiff commenced to lay its track from Avenue N along the proposed line of connection inside and north of the sea wall, when defendant tore up the track so laid, and has since with its police force forcibly prevented the laying of this track connecting the lines of Avenue N and Ninth street. The location of this connection is upon a curvature of more than three degrees, and is wholly between a three-degree curve and the intersection of the two streets, being described as follows: Turning out from the original track on Ninth street near the south line of Avenue L, curving southwardly upon approximately a thirteen-degree curve

to a point near the south line of Avenue M, and about 10 feet from the sea wall right of way; extends thence westwardly parallel with the sea wall right of way to a point near the west line of Eleventh street; curves thence southwestwardly upon approximately a ten-degree curve to the original track on Avenue N near the east line of Twelfth street, a distance of about 1,200 feet. A map hereto attached shows the location of this relocation, and also a full three-degree curve, which shows that the relocation is within the limitations of the ordinance, being between the full three-degree curve and the original line at the intersection of Ninth street and Avenue N.

In 1894 the city council adopted a resolution declaring all the privileges, rights, and franchises theretofore assented to by the city to be forfeited, and under the instruction of the council a suit was brought by the city of Galveston against the plaintiff to have such forfeiture judicially declared. This suit was tried in 1896, and resulted in a judgment in favor of the city, declaring the forfeiture as prayed for, but this judgment was in 1897 reversed by the Supreme Court, and judgment rendered for plaintiff. During the pendency of said proceedings plaintiff was unable to raise money to maintain its road in proper condition, and by a contract executed May 21, 1895, by and between plaintiff and the Galveston, La Porte & Houston Railway Company it was agreed that the respective properties should be operated and used together, with a view to consolidation, and therein the La Porte Company agreed to maintain plaintiff's tracks, roadbed, etc., in the city of Galveston, and to operate trains over its tracks, and pursuant to said contract the La Porte Company took possession of and operated plaintiff's railroad. By an act of the Twenty-Fifth Legislature (chapter 167, Acts 1897) the La Porte road was authorized to acquire by purchase, lease, or otherwise the property and franchises of plaintiff, and plaintiff was authorized to sell the same. On January 27, 1896, by proceedings instituted in the United States Circuit Court, a receiver was appointed for the La Porte road. Thereafter, during the year 1896, the trestle at Ninth street and Avenue N was damaged by the water of the gulf, and said receiver was without funds with which to repair the same, though it operated other portions of plaintiff's road. Upon the termination of the receivership proceedings in 1899 the properties of the La Porte Company, together with all its rights under said contract with plaintiff, were sold by the receiver under order of the court and acquired by the Southern Pacific Company, whereupon said last-named company took possession of plaintiff's railroad and began to repair its tracks, commencing on Avenue N near Twenty-Fifth street, and had proceeded eastwardly along Avenue N to Twenty-First street, when the storm of 1900 interrupted all business in the city of Galveston

and forced a cessation of improvements along plaintiff's tracks, including repairs to the trestle at Ninth street and Avenue N.

It was alleged that a connection inside of and north of the sea wall between the separated portions of its tracks is necessary to the operation of its railroad, and that after the sea wall was constructed across its line at Ninth street and Avenue N, and after plaintiff had selected a line along which to relocate its said connection, application was made by it to the Railroad Commission of Texas for authority to change its line, and to construct a track along the proposed line of relocation. Thereupon the Railroad Commission on July 27, 1903, made the following order:

"The matter of the application of the Galveston & Western Railway Company for permission to change the location of its track in the City of Galveston, on account of the construction of the Galveston sea wall, having been heard by this commission on July 23, 1903, and the same having been taken under advisement, it is now hereby ordered by the Railroad Commission of Texas that permission be, and the same is hereby, granted to said railway company to change its track and to construct its railroad from Avenue N into Ninth street upon any line it may select, south of Avenue L and north of the concrete sea wall, and upon which it may legally acquire the right of way."

The line along which plaintiff proposes to reconstruct its track is north of the sea wall and south of Avenue L, and plaintiff has by purchase and otherwise legally acquired a right of way varying from 50 to 100 feet wide and contiguous to the north line of the sea wall right of way along and across all private property over which it proposes to extend its said connecting track.

After the sections of the city through which its tracks were extended were filled and raised to grade, and when plaintiff began to rehabilitate its tracks, the city did not oppose the reconstruction of its railroad along Forty-Third street, and thence eastwardly into and along Avenue N to the grade-raising canal, or along Ninth street southwardly to the canal, but recognized its rights and rights of way in said streets. When plaintiff commenced placing its tracks in condition for operating trains along Forty-Third street, Avenue N, and Ninth street, a petition was presented to the board of commissioners of the city praying them to instruct the city attorney to institute proceedings to annul the franchises theretofore given to plaintiff by the city for nonuser. The said board, upon the opinion of its attorney, denied the petition, on the ground that it was wholly without authority to grant it. Thereafter a similar petition was presented to the said board, praying that the Attorney General be requested to institute proceedings in the name of the state to forfeit plaintiff's charter and thereby accomplish a removal of plaintiff's tracks, which petition was on October 28, 1909, forwarded to the Attorney General. After a verified answer and brief had been

filed with that officer by plaintiff, and after a personal investigation by him, he declined to institute such proceedings. Thereupon plaintiff reconstructed its tracks along Forty-Third street, thence into and along Avenue N, and southwardly along Ninth street to the grade-raising canal.

After the Railroad Commission had issued its order as aforesaid plaintiff, on July 31, 1903, and before purchasing a right of way over private property for such relocation of its tracks, notified the board of commissioners of the city of the said order, and of its intention to relocate its said connection along the proposed line, but expressed a willingness to establish same upon some other line should this line not be satisfactory; but no other or different line was suggested by said board, whereupon plaintiff proceeded at an expense of more than $5,000 to acquire a right of way over all necessary private property. After the filling of the canal plaintiff formally applied to the board of commissioners for a grant of assent to a connecting track along the proposed relocated line, and offered to them the opportunity to grant its assent in the manner prescribed by law and upon such conditions as it might legally impose; but said board, by resolution adopted September 22, 1910, denied its assent for plaintiff to lay a track across or upon any street in the city for the purpose of such connection.

It is alleged, in substance, that the section of the city where the relocated line is proposed is sparsely settled, where the streets are little traveled; that there are no buildings south of said line, and none on the north nearer than 200 feet; that the proposed connecting line will not extend along any street or alley of the city; that the proposed line is less than 400 feet at its farthest point from the old location; and that there are no approaches to the sea wall boulevard over the connecting line from Avenue M and M 1/2, or intervening alleys. It is charged, in substance, that defendant's refusal to give its assent to the relocation of this line across the intervening streets and alleys is harsh, oppressive, unreasonable, and unjust, and done for the purpose of preventing the operation of its said railroad over the streets over which it has the right to operate, and a mere form and pretense under the guise of which it seeks to maintain a disconnection of plaintiff's track, and indirectly divest plaintiff of its lawful rights on Ninth street and Avenue N, and force it to abandon its railroad on said streets; that, if it is not allowed to relocate such connection between Ninth street and Avenue N, the most valuable part of its railroad will be destroyed, and its creditors, who hold an aggregate secured indebtedness of more than $170,000 against plaintiff's railroad and franchise, will lose the greater part of their debt.

There were further specific allegations as to the building of the sea wall, which was al-

leged to have been strenuously urged by the city as a necessary means of saving and protecting the city, but which the city was unable to undertake on account of its financial condition, but which was, upon the plea of the city, undertaken by the county, and disruption of the plaintiff's line by the building of the sea wall, and the consequent permanent disconnection of the two ends of its line, and the necessity for a relocation of such connection on the line proposed north of the sea wall to preserve the life of the enterprise. There was a prayer that plaintiff be adjudged to have the right to establish the relocation of the connection between its line on Avenue N and on Ninth street as proposed, and that defendant be enjoined from interfering with the exercise of this right.

The following map will illustrate the situation as alleged in the petition: [See 155 S. W. 279.]

Appellee, the city of Galveston, answered by general demurrer, special exceptions, and by general and special denial of all the material allegations of appellant's petition. It also by special plea answered to the effect that subsequent to the passage of the ordinance of March 8, 1889, mentioned in the foregoing preliminary statement, the appellant changed and relocated its track connecting its two lines of track, one in Ninth street, and the other in Avenue N, by moving and locating its said connecting track some distance west from where it had been constructed and operated prior to March 8, 1889; that by such change and relocation it selected the location granted by said ordinance of March 8, 1889, and thereby exhausted all its rights granted by said ordinance to change and relocate its said connecting track at any other place in any of the streets of said city than the one so selected. And it further pleaded that, if the said ordinance did authorize the appellant to locate and construct its said connecting track, passing from Ninth street to Avenue N, on a curvature of not less than three degrees, such authority was subject to the limitation that such location should be made within a reasonable time after the passage of said ordinance, and that appellant did not at any time prior to September 27, 1910, change or attempt to change the location of its line connecting its track on Avenue N with its track on Ninth street, as the same existed continuously from the time of the passage of said ordinance of March 8, 1889, until the year 1896, and that appellant's continued use of said old location was and amounted to a selection of its location under the provisions of said ordinance, thus pleading two inconsistent defenses.

The cause being submitted to the court without a jury, judgment was rendered, by the court in favor of the appellee, city of Galveston, refusing the injunction prayed for by appellant. At the request of appellant the trial court filed his findings of fact and conclusions of law. Among such findings and conclusions we find the following:

"On August 26, 1891, plaintiff entered into an agreement with Edward and Loretta Schultz wherein and whereby plaintiff purchased and acquired the right, by deed, from Edward and Loretta Schultz, to construct, operate, and maintain plaintiff's tracks on Ninth street, and the right to construct, operate, and maintain its track over and across the sidewalk abutting lot No. 7 in the northeast quarter of outlot No. 24, in the city of Galveston, Tex., said deed containing said agreement and conveyance, and being duly of record in Book 92, pages 438 and 439, of the Deed Records of Galveston county, Tex. In said deed, which was prepared by plaintiff through its general counsel, Hon. Walter Gresham, who was also at said time either president or manager of plaintiff, there is the following recital: 'That whereas, the Galveston & Western Railway Company is desirous of constructing a permanent railroad, with both narrow and broad gauge tracks upon and along Ninth street, in the city and county of Galveston, state aforesaid, and across the sidewalk of said street abutting upon lot No. 7 in the N. E. quarter of outlot No. 24.'

"At or about the date of said deed, and during the year 1891, plaintiff moved its track on Ninth street from the center of such street further west and upon the sidewalk. That such movement of the track was made without any further authority from the city than such as might have been claimed under the ordinance of March 8, 1889. That while the full extent of the movement of that track along Ninth street is not reflected by the evidence, it yet appears that it was made along the sidewalk and east side of lot No. 7 of the northeast block of outlot No. 24, in the city and county of Galveston, Tex., and that it was made at the beginning of the curve connecting the plaintiff's railroad on Ninth street and Avenue N, that such movement of the track was made for the purpose of lightening that curve, and also to avoid encroachment of the gulf, and that it was further made with a view to a permanent location of the plaintiff's railroad and its curve at Ninth street and N. In making such change in location of its track and curve at Ninth and N plaintiff was acting under the ordinance of March 8, 1889, and the authority therein conferred, and had no other authority or permission for so doing. This finding is confirmed by the contention of the plaintiff in written argument upon the submission of this cause in words, as follows: 'In the year 1891 the line on Ninth street opposite the Schultz lot was moved from the center of the street on to the sidewalk to lighten the beginning of the curve at that point. True, the Galveston & Western Railway made only a slight change in a small portion of its track; nevertheless some change was made, and the company, it occurs to us, thereby indicated an unequivocal acceptance of the right granted in section 2 of the ordinance of March 8, 1889.'

"Section 2 of the ordinance referred to in the foregoing quoted argument of plaintiff is the section of such ordinance reciting that, 'The right is hereby granted to said railway company to curve from Ninth street into Avenue N * * * upon any degree of curvature not less than three degrees which said railway company may determine upon.' While it is apparent that the quoted argument is directed to the question of acceptance of the ordinance by plaintiff, yet it unmistakably indicates that in making such change in its curve at Ninth and N plaintiff was also making a binding election and selection of a new location of its track and change in its curve under the power conferred under the said section 2 and other provisions of said ordinance of March 8, 1889. Previous to such change in 1891 plaintiff's track had been located in and occupied the

center of Ninth street for many years, and by moving the location of its track and changing its curve at Ninth and N in 1891 plaintiff exhausted its power to make yet another and different location of its curve between Ninth street and Avenue N, and, never having received any additional power or authority from the city of Galveston since the passage of said ordinance of March 8, 1889, plaintiff has no power or authority, and has never obtained the consent of the city of Galveston, to make the proposed relocation of the curve between Ninth street and Avenue N. * * *

"The proposed relocation of the connection between the road on Ninth street and Avenue N is entirely different, and begins at a point far north of the point selected in 1891 and crosses the streets and alleys at different points from the connection of the curve, the beginning of which was started in 1891, and, as must be inferred from the evidence, was completed some time thereafter and before 1896; the evidence being undisputed that the plaintiff did operate its trains along Ninth street around the curve into Avenue N after 1891 up to the year 1896.

### "Conclusions of Law.

"Under said ordinance of March 8, 1889, granted by defendant to the plaintiff, defendant authorized plaintiff to make a change in its existing curve from Ninth street into Avenue N as expressed in section 2 of said ordinance. Under this assent of the city plaintiff in 1891 made a change in its curve at Ninth street and Avenue N, as heretofore stated in the findings of fact, and thereby exhausted the power or right of plaintiff to make any further change in its curve between Ninth street and Avenue N without further assent and authority from the defendant, which further authority or assent has never been granted by or obtained from the defendant. Said ordinance of March 8, 1889, does not give a continuing assent or authority to plaintiff to change its curve at Ninth and N as often as plaintiff might determine desirable or necessary, but admits only of one change, and, when such election and selection of a new location of and for such curve at Ninth and N was made by plaintiff in 1891, no further power or right or assent to any further or different location of such curve can be predicated upon the ordinance of March 8, 1889. Grants and rights and assents such as are reflected in the ordinance of March 8, 1889, being most strongly and strictly construed against the grantee, the plaintiff, and in favor of the grantor, the defendant. Galveston Wharf Company v. Santa Fé, 81 Tex. 494, 17 S. W. 57.

"Plaintiff in this suit seeking by injunction to restrain the defendant from interfering with plaintiff in making a proposed relocation of a curve connecting its track on Avenue N with its track on Ninth street upon a different location from that occupied by the curve selected, constructed and used in 1891 and crossing streets and alleys in said city at different points from those crossed by the curve in 1891, it must be held that the plaintiff is without any right or authority and without the assent of the city of Galveston to make any such proposed relocation, and the injunction is denied."

[1] Appellant by its first assignment of error insists that the trial court erred in not finding and holding that from the charter rights and powers granted to appellant's predecessors by the Legislature, to wit, to own, construct, maintain, equip, and operate a continuous line of railroad along Ninth street, thence into and along Avenue N, etc., to which appellee, the city of Galveston, assented, there was an implied right to relocate its line of connection between said Ninth street and Avenue N on and across other streets whenever it became necessary to do so to avoid the sea wall and to preserve the continuity of its line of railroad.

Appellant's predecessors were authorized and empowered by its charter to own, construct, maintain, equip, and operate a continuous line of railroad through the streets of Galveston in 1875, which rights passed to appellant by succession. In the year 1875 appellant's predecessor, the Galveston, Brazos & Colorado Narrow Gauge Railway Company, located and built a railroad in and along Ninth street to its intersection with Avenue N, thence curving into and extending westwardly along Avenue N, etc. By virtue of such charter powers said railway company had the right to locate and construct its railroad on any of the streets of Galveston. It availed itself of such power, and did select its route, and did locate, construct, and operate its railroad along Ninth street and Avenue N. At that time said railway company had no right to change its selected route after it had constructed and located its railroad, without the consent of the Legislature. We hardly think that it will be seriously contended that the Legislature intended by the words of the charter granted to the Galveston, Brazos & Colorado Narrow Gauge Railway Company to confer upon said company the power to build and construct its railroad in and along any of the streets of the city of Galveston and to confer upon said company the right to change its railroad from street to street whenever in its judgment the necessities of its railroad required such change, especially in view of the passage of article 6497, Revised Statutes of 1911, hereinafter referred to.

In 1876 the Legislature passed an act (now article 6497, Revised Statutes of 1911) which provides that no railroad shall be constructed upon or across any street, alley, square, or highway of any incorporated city or town without the assent of said city. In 1881 the city of Galveston, by an ordinance adopted in 1881, granted the Texas & Mexican Railway Company, the successor of the first company, the right to occupy Ninth street and Avenue N with the railroad theretofore constructed by the said first company. After the connection of said railroad had been destroyed by the storm of 1886, to wit, on the 8th day of March, 1889, the city of Galveston by its governing body enacted an ordinance granting the company then owning said railroad the right to connect its line on Ninth street with its line on Avenue N by a curve from Ninth street into Avenue N, upon any degree of curvature not less than three degrees which said railway company might determine upon. We find nothing in the charter of said railway company, nor in either of the ordinances above mentioned, that justifies or supports the contention of appellant that under such charter and ordinances it has the implied

right to construct and operate its connecting line upon its proposed route at any time necessity calls for such relocation and construction, nor do we find anything in either of said ordinances authorizing such continuous rights, either expressed or implied, as contended for by appellant.

If appellant at this time has the right to relocate and construct its said connecting line upon its proposed route, it has such right only by virtue of the express provisions of said ordinance of March, 1889, and not by implication. We overrule the first assignment.

[2] It is insisted by the second assignment that the pleadings of the defendant, city of Galveston, do not raise the issue, nor did defendant set up in its answer as a ground of defense to appellant's cause of action, that the right granted under the ordinance of March 8, 1889, was exercised and exhausted by plaintiff in 1891 by moving its track from the center of Ninth street on to the sidewalk adjacent to the lots owned by Edward Schultz and wife, and that therefore there is no basis for the judgment rendered by the trial court. Appellant's contention in support of the foregoing proposition is that it affirmatively appears from the face of defendant's sworn pleadings that appellant did not at any time prior to the year 1903 change or attempt to change the line of connection from Ninth street into Avenue N, as the same had existed from the time of the passage of the ordinance of March 8, 1889, continuously until the year 1903, and that therefore the court erred in finding and holding that plaintiff prior to the year 1903 changed the degree of curvature of its line from Ninth street into Avenue N, and thereby exercised and exhausted that right.

In answering appellant's fourth amended petition, among other things, defendant pleaded as follows:

"That, if by said ordinance there was granted to plaintiff the right of selection which it claims, the defendant alleges that the plaintiff did thereafter and prior to July 31, 1903, select a line for the connection between its track on Ninth street and its track on Avenue N other and different than the line now selected by plaintiff and described in said petition as its 'proposed relocation'; wherefore the right of selection, if any, was exhausted by the exercise made by plaintiff of the rights granted to it and by the selection which it did make of a location for such connection."

In answering appellant's trial petition defendant pleaded as follows:

"That, if by said ordinance there was granted to plaintiff the right of selection which it claims, the defendant alleges that the plaintiff did thereafter and prior to July 31, 1903, select a line for the connection between its track on Ninth street and its track on Avenue N other and different than the line now selected by plaintiff and described in said petition as its 'proposed relocation'; wherefore the right of selection, if any, was exhausted by the exercise made by plaintiff of the rights granted to it and by the selection which it did make of a location for such connection."

After these pleas were filed appellant filed what it termed its supplemental trial amendment. Thereafter defendant, in answering said supplemental trial amendment, pleaded as follows:

"And further says that neither the plaintiff nor the Galveston, La Porte & Houston Railway Company, nor the receiver therefor, nor Collis P. Huntington, nor the Southern Pacific Railway Company, nor the Galveston, Harrisburg & San Antonio Railway Company, nor the plaintiff herein at any time prior to July 31, 1903, changed or attempted to change the line, or any part of the line, of plaintiff's railroad in the city of Galveston as the same existed from March 8, 1889, continuously to the destruction of said connection in 1896, except as such connection was restored, and said line changed by the line of connecting track built by J. M. O'Rourke & Co., as alleged in said petition."

It is insisted by appellant that this last plea was inconsistent with the pleas found in appellee's amended and supplemental answers, above quoted, and, as the same is the last plea filed by appellee, it is, in effect, a confession that no change was made by appellant in its curvature track at the intersection of Ninth street and Avenue N after the passage of said ordinance.

We decline to follow appellant in such contention. It is apparent from the pleadings of defendant as a whole that it considered the main issue in the case at the last trial to be whether appellant had exhausted its rights given by said ordinance by the change made by it in its said curvature track after the passage thereof. We think it plainly apparent from defendant's pleadings as a whole that it was attempting to allege as defenses: First, that appellant had made a change in its said connecting line after the passage of said ordinance of March 8, 1889, and had thereby exercised and exhausted the rights given thereby; and, second, that if no such change was made, then appellant had exercised and exhausted such right by continuing to use the old location for a long time, and thereby selecting said old location as its right under said ordinance, and that it cannot now relocate its line on its proposed route.

[3] The two allegations are to some extent inconsistent, but under article 1902, Vernon's Sayles' Statutes, the defendant may plead as many several matters as he may think necessary to his defense, and it is only required that he shall file them in due order of pleading. A defendant is allowed to plead as many inconsistent matters of defense as he pleases to reduce to writing, just so he files them in due order of pleading. Weldon v. Texas Meat Co., 65 Tex. 487; H. E. & W. T. Ry. Co. v. De Walt, 96 Tex. 121, 70 S. W. 531, 97 Am. St. Rep. 877; Fowler v. Devenport, 21 Tex. 633; Cranfill v. Hayden, 22 Tex. Civ. App. 656, 55 S. W. 811.

In H. E. & W. T. Ry. Co. v. De Walt, supra, it is said:

"A defendant has the right to plead inconsistent defenses, and, where in one part of an answer he denies or otherwise puts in issue a

fact, and in another part alleges its existence, the answer cannot be taken to be an admission of such fact."

It is apparent from defendant's amended answer, its first supplemental answer, and its supplemental reply to appellant's trial amendment, when taken together, that its main defense was that appellant had relocated and changed its said connecting track after the passage of the ordinance of March 8, 1889, and that it had thereby exercised and exhausted all rights conferred upon it by said ordinance. While defendant was unfortunate in not pleading more definitely and with undoubted clearness, we think it would be a perversion of defendant's pleadings as a whole to hold that by such pleadings it intended to or had abandoned its allegation that appellant had relocated and constructed its said connecting track at the intersection of Ninth street and Avenue N, after the passage of said ordinance of March 8, 1889, or that by its supplemental trial answer it had confessed or admitted that no such relocation and construction had been accomplished. We conclude that defendant's pleadings as a whole were sufficient to raise the issue as to whether appellant had made such relocation of its said connecting track after the passage of the ordinance, and therefore overrule the second assignment.

[4] It is insisted by appellant's third, fourth, and fifth assignments: First, that the trial court erred in holding that the moving of appellant's said connecting track from the center of Ninth street onto the sidewalk on the west side of said street in 1891 was an exercise and exhaustion of the rights granted by said ordinance of March 8, 1889, to relocate and construct its said connecting track; second, that the trial court erred in holding that the right to change the line of connection from Ninth street into Avenue N was exercised and exhausted prior to the time appellant selected the proposed route, which is alleged to have been selected in or about the year 1902; and, third, that the trial court erred in holding that appellant has not the continued right under the said ordinance of March 8, 1889, to change and relocate its said connecting line upon the proposed route within the area of a three-degree curve.

We have already said, and here repeat, that if appellant still has the right to relocate and construct its said connecting line on its proposed route, such right is by virtue of the provisions of said ordinance of March 8, 1889, and that this right depends upon the fact as to whether appellant had after the passage of the ordinance changed the location of its said line by removing it from the center of Ninth street and establishing it on or near the sidewalk on the west side of said street, and whether such removal and establishment was an exercise and exhaustion of the rights granted by said ordinance. That appellant did remove its said line from the

center of Ninth street and reconstruct it on or near the sidewalk on the west of said street on or about the 26th day of August, 1891, and that it remained there and was operated by appellant from that time to the year 1896, is undisputed. Col. Walter Gresham, of counsel for appellant, testified that in 1891 there was a change made in the line on Ninth street; that the track was thrown west in Ninth street, that is, moved west; that this move was from the center of Ninth street on to the sidewalk; that the purpose of moving the track a little to the west was to ease off the curve, but that the main purpose was to avoid the encroachment of the gulf at that point; that this change was near the property of Mr. Schultz, and at the point where said track curves from Ninth street into Avenue N.

Appellant requested the court to find as follows:

"In June and July, 1889, there was both a narrow and standard gauge track from Ninth street into Avenue N, which continued up to 1896 without any change, except such as was made in 1891, when the track on Ninth street was moved from the middle of that street on to the sidewalk opposite the property owned by Edward Schultz and wife. In making the change in 1891, by moving the track from the center of Ninth street onto the sidewalk opposite the lot owned by Edward Schultz and wife, no property was bought by plaintiff, nor were any damages paid to any person other than to said Edward Schultz and wife."

"From the time of the passage of the ordinance of March 8, 1889, until plaintiff selected the proposed relocation for its connection in 1902, there was no change made in the curve from Ninth street into Avenue N, except such as was made at the time plaintiff moved its track from the center of Ninth street on to the sidewalk opposite the lot owned by Edward Schultz and wife."

It is clear therefore that a change in the location was made of said connecting line in 1891. This presents the question: Did such change, relocation, and reconstruction exhaust appellant's right to make further changes by virtue of the provisions of said ordinance of March 8, 1889, or is the right granted by said ordinance a continuous right which authorizes appellant to relocate and reconstruct its said line at any degree of curvature from Ninth street into Avenue N, not less than three degrees, whenever in its judgment the necessities of its railroad requires such relocation?

It is vigorously contended by appellant that the grant to it of the right to curve its track from Ninth street into Avenue N, upon any degree of curvature not less than three degrees, was the grant of a "right of way," as that term is usually understood, when speaking of a "right of way" of railroads, and that appellant has the right at any and all times to shift its said track from one portion of its said "right of way" just as it could do if such "right of way" was not within the streets of an incorporated city, and therefore the removal of its said track on Avenue N in 1891, from one part of its

"right of way" to another part thereof, did not exhaust its right of relocation granted by said ordinance.

We are unable to agree with the appellant's propositions. The assent or authority of an incorporated city for a railroad company to construct and operate its railroad in and upon its streets, is not the grant of a "right of way" such as is obtained along its line outside of such city, but is more properly called a passway easement, or franchise only. Appellant has no such right as it contends for under said assignments 3, 4, and 5.

The trial court found, under the undisputed facts, that appellant had relocated its said connecting track in 1891, after the passage of said ordinance of March 8, 1889, and that such relocation was a full exercise and exhaustion of appellant's right under said ordinance to make another location for its said line. We are not disposed to disagree with the finding of the trial court on such issues. We therefore overrule assignments 3, 4, and 5.

The contentions presented by appellant's remaining assignments have been ably discussed, correctly decided, and settled against it by the opinion of this court upon a former appeal of this case written by Justice Reese deceased, formerly a member of this court, which is reported in the 155 S. W. 273, and we see no reason for a rehearsal of the reasons then given for a refusal to sustain such contentions or to further discuss the questions therein decided, and we therefore content ourselves with a reaffirmance of the questions so decided.

This disposes of all of appellants' assignments. We find no error in the judgment rendered in the trial court, and therefore the same is affirmed.

Affirmed.